[No. 8,570.—Department One.]
December 15, 1882.

## CATHERINE C. HORGAN v. WILLIAM AMICK.

GRAIN HARVESTED FROM HOMESTEAD NOT EXEMPT FROM EXECUTION.
HOMESTEAD—CROP—EXECUTION—EXEMPTION—TROVER.—Grain which was harvested from lands constituting a homestead (lands which before the declaration of homestead were community property) is not, as such, exempt from execution.

APPEAL by defendant from the judgment of the Superior Court of the County of Yolo. BUSH, J.

Action to recover a lot of wheat, or the value thereof. The plaintiff was a married woman, the wife of Cornelius Horgan. The defendant, a constable, justified under writs of attachment against the husband of plaintiff. A bill of exceptions shows that the action was determined in the Court below on the following agreed statements of facts:

1. That the wheat described in the complaint was raised by the husband of plaintiff, upon the premises in said complaint described; plaintiff at that time residing with her husband and doing the household work.

2. That the seed from which said wheat was raised was sowed partly in the month of September, 1880, and partly in the month of January, 1881.

3. That at the time of the filing of the declaration of homestead in said complaint mentioned, all of said grain was growing and above the ground, but the same was not cut until more than one month after the filing of said declaration.

4. That said wheat was taken by defendant on the said premises, on the same day that the same was threshed.

5. That the value of said wheat was and is the sum of five hundred and fifty-one dollars and sixty-six cents.

6. That the allegations in the answer concerning the issuance and levy of the writs of attachment therein mentioned, and concerning the actions in which said writs were issued, are true.

After the decision in department, a petition for hearing in bank was presented and denied.

*J. C. Ball, Jo. Craig,* and *J. W. Armstrong,* for Appellants.

The plaintiff must, to bring her case within the exception to the general rule that all property of the judgment debtor is liable to execution, show that the wheat was exempt from execution. Section 690 of the Code of Civil Procedure contains an enumeration of all the property which is exempt from execution; but wheat grown upon the homestead is not among the enumerated property. The homestead itself is not included; but Section 1240 of the Civil Code declares: " The homestead is exempt from execution on forced sale, except as in this title provided." Nothing is said about wheat grown on the homestead; but when the homestead is of greater value than $5,000, and is sold under proceedings under execution as directed by the Civil Code, §§ 1245 to 1255, the amount of the homestead exemption must be paid to the claimant, and the balance of the proceeds of sale must be applied in satisfaction of the execution (C. C., § 1256); and Section 1257 of that Code declares: " The money paid to the claimant is entitled, for the period of six months thereafter, to the same protection against legal process and the voluntary disposition of the husband, which the law gives to the homestead." Wheat grown on the land is not "money paid to the claimant," and is not within this section.

This is the definition of a homestead as given in Section 1237 of the Civil Code: " The homestead consists of the dwelling-house in which the claimant resides and the land on which the same is situated, selected as in the title provided." Then as wheat, threshed wheat, is neither a dwelling-house nor land, it is not a "homestead," and if not a "homestead," it is not within Section 1240 of the Civil Code, already cited, which only mentions the "homestead" as exempt from execution.

According to the maxim *expressio unius est exclusio alterius,* the enumeration of property in Section 690 of the Code of Civil Procedure, and in Sections 1240 and 1257 of the Civil Code, which shall be exempt from execution, excludes all other property from the exemption, and the following cases were decided upon this principle: *Quigley* v. *Gorham,* 5 Cal. 418; *Robert* v. *Adams,* 38 id. 383; *Brusie* v. *Griffiths,* 34

id. 302. If the Legislature had intended that the "rents, issues, and profits" of the homestead should be exempt from execution, they would have so provided in terms, and would have declared that the husband should not make a voluntary disposition thereof, as they did in the case of the proceeds of the sale of the homestead. In construing the sections of the Codes cited, the Court will "not insert what has been omitted, or omit what has been inserted." (C. C. P., § 1858.)

The judgment should be reversed.

*W. B. Treadwell*, for Respondent.

This case presents but one question, viz.: Whether a crop of grain, raised on premises constituting a homestead, when the value of the land and crop together is less than five thousand dollars, is exempt from execution for the debts of the husband. The Court below held that such crop was so exempt, and we submit that this ruling is correct. The statute concerning homesteads, like other statutes of exemption, is founded upon considerations of public policy, beneficial in their nature, and is therefore to be liberally expounded in furtherance of the object intended to be attained. (Thompson on Homesteads, §§ 4, 7, and authorities therein cited.) In determining what constitutes the homestead exemption, the reason and spirit of the law must be considered, and such a construction given as will include within the exemption all things coming under that reason and not contrary to the letter of the law, while excluding all things not within that reason, even though apparently within the letter. In conformity with this rule the Courts have always been liberal in ascertaining the extent of this exemption, so as to carry into effect the intention of the Legislature in creating it. (Id., Chap. iii., Art. i.; *Greeley* v. *Scott*, 2 Woods, 657; *Clark* v. *Shannon*, 1 Nev. 568; *Goldman* v. *Clark*, id. 607; *Krueger* v. *Pierce*, 37 Wis. 269; *Hubbell* v. *Canady*, 58 Ill. 427; *Stevens* v. *Hollingsworth*, 74 id. 206; *Anderson* v. *McKay*, 30 Tex. 186; *Bunker* v. *Paquette*, 37 Mich. 79.) The object of the homestead exemption is not merely to afford a naked shelter to the family, but, like all other exemptions, to afford it a means of livelihood, and thus to prevent its members from being driven by destitution to seek a support from public

charity. The policy of the law in this country has always
been, so far as possible, to prevent persons, whether through
misfortune or improvidence, from becoming a charge upon the
public purse; and, to this end, the statutes of exemption have
been so framed as to secure to all persons the means of ob-
taining a support through their own exertions. In view of
this fact, it would be absurd to suppose that the Legislature
intended that, though the land and buildings constituted a
homestead, the owners should not be allowed to use them for
any useful purpose. It has been frequently decided that a
homestead may include or consist of a garden or farm; but, if
the products of such farm are not exempt, then all motives
for exertion are withdrawn in the very cases to which the
statute was intended to apply, viz.: those in which the owners
are in impoverished circumstances. To construe this statute
otherwise would not only defeat its manifest object, but would
convert it into an instrument of fraud and oppression. On
the theory of appellant, a man may invest $5,000 in a splendid
and luxurious mansion, and place it beyond the reach of his
creditors; but if he has a little farm worth $1,000, and is con-
tent with the humble shelter of a cottage, he dare not raise
food for his hungry family upon those premises, without
allowing a rapacious creditor to seize it before it can be used.
So to hold would make the statute a mockery. On the con-
trary, we contend that, at least in cases where the total ex-
emption does not exceed the statutory limit of $5,000, the
debtor may safely cultivate the homestead premises or apply
them to any other useful purpose, and that the fruit of such
exertions will be beyond the reach of creditors. In accordance
with these views it has been decided that the proceeds of an
insurance policy on a homestead building are exempt (*Hough-
ton* v. *Lee*, 50 Cal. 101); that butter made from the milk of an
exempt cow is also exempt (*Leavitt* v. *Metcalf*, 2 Vt. 342;
S. C., 19 Am. Dec. 718); and that the exemption of a horse
includes a saddle and bridle necessary for its beneficial use
(*Cobbs* v. *Coleman*, 14 Tex. 594).

The cases cited by appellant (*Quigley* v. *Gorham*, 5 Cal.
418; *Brusie* v. *Griffiths*, 34 id. 302; and *Robert* v. *Adams*, 38
id. 383) are in no respect in conflict with these views, but
decidedly support them. In all of them the inquiry was not

whether the thing claimed as exempt was within the strict letter of the law, but whether it was included within its reason and spirit. As was said in the latter case: "From this summary of the Act, it is entirely plain that its purpose was to secure to the judgment debtor the means to prosecute his vocation, and thus earn a support for himself and family. In securing to a farmer two  *  *  horses,  *  *  *  the Legislature intended, by this exemption, to enable him to prosecute his business of farming, in the ordinary sense of that term; and the  *  *  *  horses  *  *  *  which are reserved to him must be such as are suitable and intended for that use. If a contrary construction of this provision were to prevail, a farmer in failing circumstances might invest his whole estate in two valuable stallions or race horses, worth $10,000 or $20,000 each, with no intention whatever to use them for farming purposes; and, by claiming them as exempt from execution, might defraud his creditors, under color of law, to a large amount. The benevolent design of the statute might thus be perverted to purposes of the grossest fraud." Accordingly it was held in that case that a stallion, owned by a farmer, but used and intended for breeding purposes only, was not exempt. It will thus be seen that the manifest purpose and object of the Act was held to control the meaning of the words used, and to exclude things included within the letter of the law, when the object intended required their exclusion.

So far as we have been able to ascertain, the precise question here involved has been discussed or decided in one case only. In that case it was held that the profits of the homestead were exempt in the same manner as the homestead itself. (*Marshall* v. *Cook*, 46 Ga. 302.)

McKINSTRY, J.:

Is grain which was harvested from lands constituting a homestead (lands which before the declaration of homestead were community property) exempt from execution for debts of the husband?

All the products of the homestead are not *in terms* made to constitute a portion of the homestead. It is urged that homestead laws are framed upon considerations of public policy,

beneficial in their nature, and ought to be liberally expounded. We agree that such laws should be construed in such manner as shall further the object intended to be attained, and as will include within the exemption all things coming within the spirit of the law, except where such construction is contrary to the evident meaning of the statute, or (where the statute is silent) of other statutes bearing upon the subject. But reading our homestead law in connection with Section 690 of the Code of Civil Procedure, it seems clear that the Legislature intended that the whole crop of grain raised upon a homestead farm, without reference to its quantity, should not be exempt from execution. The third subdivision of the section of the Code of Civil Procedure referred to reads: "The farming utensils or implements of husbandry of the judgment debtor; also, two oxen, or two horses, or two mules, and their harness; one cart or wagon, and food for such oxen, horses, or mules for one month; also, all seed, grain, or vegetables actually provided, reserved, or on hand for the purpose of planting or sowing at any time within the ensuing six months, not exceeding in value the sum of two hundred dollars, and seventy-five bee-hives, and one horse and vehicle belonging to any person who is maimed or crippled, and the same is necessary in his business."

It would be giving a strained interpretation of the language of the foregoing to say it was intended, *in addition* to all the crop grown upon the homestead, that the debtor should be secured seed-grain to the value of two hundred dollars. It is obvious it is meant that only grain to that amount shall be exempt. It does not appear that the statutes of Georgia, under which *Marshall* v. *Cook*, 46 Ga. 302, was decided, were like ours.

Judgment reversed.

Ross and McKee, JJ., concurred.