No. 6088.

## S. L. COATES ET AL. *v.* S. W. CALDWELL ET AL.

1. HOMESTEAD DESIGNATION.—A head of a family by living upon a tract of land of less than two hundred acres thereby sufficiently designates such tract as the homestead, even if other lands are owned by the head of the family.

2. CROPS GROWN UPON HOMESTEAD.—Cotton grown upon the homestead and unpicked is exempt from execution. After it has been picked the exemption ceases and it is subject to execution.

3. DAMAGES FOR WRONGFULLY SUING OUT AN INJUNCTION.—When an injunction is sued out against the sale of personal property seized in execution, some of which is subject to execution, the measure of damages upon dissolving the injunction is the value of the property subject to execution.

4. INJUNCTION—PRACTICE.—The defendant, upon an injunction suit upon proper pleadings in reconvention and proof, may recover his damages for the wrongful suing out of the injunction without service of citation upon the sureties upon the injunction bond.

5. CASE FOLLOWED.—Sharp v. Schmidt, 62 Texas, 263, followed.

APPEAL from Dallas. Tried below before the Hon. George N. Aldridge.

The facts are stated in the opinion.

*Marshall & Gillespie* and *Stemmons & Field,* for appellants.

*S. W. Caldwell* and *W. M. Mann,* for appellees, cited Revised Statutes, article 2335, section 15; 59 Texas, 205, Alexander v. Holt; 1 White & Willson, article 172; 59 Texas, 637, Willis v. Moore; 60 Texas, 154, Avery & Son v. Stewart; 57 Texas, 129, Texas & New Orleans Railroad Company v. White; 47 Texas, 28, Cook v. Sparks.

GAINES, ASSOCIATE JUSTICE. This suit was brought by appellant Coates to restrain the sale of certain cotton levied upon under execution against him. The writ was issued upon a judgment rendered in a justice court for seventy dollars in favor of appellee Caldwell, and was levied upon the cotton by appellee Mann, who was constable of the precinct. The property levied upon consisted of about eighteen hundred pounds of cotton picked but not removed from the field, and about one thousand and fifty pounds matured but not picked. The petition alleged, that the cotton was raised upon the homstead of plaintiff, and claimed that it was exempt from levy and sale on that ground. The defendants denied in their answer, that the land upon which the cotton was grown was the homestead of the plaintiffs; denied also the exemption in any event, and pleaded in reconvention the loss of the debt as damages for the wrongful suing out of the injunction. The sureties upon the injunction bond were not cited to answer the plea in reconvention, but upon final hearing the court dissolved the injunction and gave judgment in favor of Caldwell, against them as well as against the plaintiff, for his damages to the amount of his debt as claimed by him. All the defendants in the judgment appeal.

It is assigned, that the court erred in dissolving the injunction, and also in rendering judgment against the sureties on the injunction bond, without service of citation of the plea in reconvention.

As bearing upon the question of the exemption, appellees insist, that the testimony does not show that the land upon

which the cotton was grown was the homestead of plaintiff. The plaintiff testified that the land consisted of one hundred and sixty acres upon which he lived with his family—a wife and five children—that it constituted his home both at the time the cotton was grown and when the levy was made, but that he "had never had it designated as such," and that he owned another tract of ninety acres in another county, which was not fully paid for. Appellees claim that he must have designated his homestead before he could claim his place of residence as exempt. We think, however, that by living upon the land with his family, as his home, the plaintiff designated that property as his homestead. There being less than two hundred acres, it was not necessary to define the boundaries. We presume the witness meant to say that he had never designated his homestead in the mode provided for by the statute. (Rev. Stats., arts. 2343 et seq.); but the statute applies to cases in which exemptions are claimed in tracts of land which exceed the limits allowed by the Constitution and laws.

The levy upon the cotton presents two questions which have not been decided in this court:

1. Is cotton which has been grown upon the homestead subject in any event to the levy of an execution?

2. Is a matured crop not severed from the homestead land so subject? In Alexander v. Holt, 59 Texas, 205, it is held that the crops upon a homestead while growing are exempt from execution; but nothing is said as to those which are ripe, but not harvested or gathered. Conceding for the sake of the argument, that an unsevered crop not upon the homestead is subject to levy and sale, we have quite a different question here. Upon a levy upon such property, the officer must either take possession of the land to gather the crop or must sell it ungathered. In the latter case the right would pass to the purchaser at the sale to go upon the land and take off the crop. In order to complete a sale or to make it effective, possession must be taken of the land upon which the crop is found, and for a time, at least, the officer or purchaser must exercise dominion and control over it. This, in our opinion, is an invasion of the homestead right and can not be permitted. It may be that as between the execution creditor and the owner of the homestead the crops, until severed, should be deemed a part of the land. But this we need not decide. The reasons given in Alexander v. Holt, supra, for holding crops growing upon the

homestead exempt, apply to matured crops, but not with the same degree of force. We conclude that the unpicked cotton was not subject to levy.

As to the cotton which had been, we are of opinion, that it was not exempt. We are cited to no case in which the question has been directly passed upon in this court. The decisions in other States are not numerous, but the weight of the authority is that crops which have been grown upon a homestead are not exempt merely for that reason. Such is the ruling in California (Horgan v. Arneck, 62 Cal., 401) and in North Carolina (Bank v. Green, 78 N. C., 247). The Supreme Court of Georgia holds the contrary doctrine. (Marshall v. Cook, 46 Ga., 301; Wade v. Weslow, 62 Ga., 562.) The latter case goes the extreme length of holding that live stock purchased with the proceeds of crops grown upon the homestead is also exempt. We think the framers of our Constitution intended to go no farther in that instrument than to exempt the homestead itself. They gave the Legislature the power and made it its duty " to protect by law from forced sale a certain portion of the personal property of all heads of families." (Const. 1876, art. 16, sec. 49.) , It is evident that it was not intended by the Constitution itself to exempt any personal property. The Legislature has provided a most liberal protection, and among numerous other articles exempts " all provisions and forage on hand for home consumption." (Rev. Stat., art. 3335.) Nothing is said as to crops which have been produced upon the homestead, and we think this plainly shows that it was not contemplated that they should be protected from forced sale merely upon the ground that they were so produced. The same intention is manifested by the exemptions to be set apart to the widow and children in the administration of estates. (Rev. Stat., art. 1993 et seq.) The exemption laws of California are similar to ours, though we infer they are wholly statutory. The construction placed upon them by the Supreme Court of that State is based upon considerations similar to those by which we have reached our conclusion upon this question.

It follows, we think, that the court below erred in not holding the unpicked cotton exempt from execution. There was only eighteen hundred pounds of that which had been gathered, which, at two and a half cents per pound (the only estimate placed upon it in the testimony) was worth but forty-five dol-

lars. The injunction only forbid the officer's interference with the cotton, and did not otherwise restrain the writ. The value of the cotton subject to the levy was the limit to which the defendant (Caldwell) was entitled to recover for the wrongful suing out of the writ. The error of the court has therefore operated to the prejudice of appellants and the judgment must be reversed.

The authorities from other States seem to hold that in the absence of an express provision a statute authorizing judgment to be rendered against sureties on an injunction bond for the damages for wrongfully suing out the writ the sureties must be cited or an independent action must be brought on the bond. (Elder v. New Orleans, 31 La. An., 500; Henley v. Claiborne, 3 Lea, 213; Hayden v. Keith, 32 Minn., 277.) But it is held by this court in Sharp v. Schmidt, 62 Texas, 263, that the defendant may recover his damages for the wrongful issue of the writ of injunction upon the proper pleadings and proof without serving citation upon the sureties. We think this practice was clearly contemplated by the laws existing at the time the Revised Statutes were adopted. (Pas. Dig., art. 3936.) The commissioners who made the revision say in their report, in effect, that in preparing the title on injunction they had carefully preserved the substance of the former laws. (2 Sayles's Texas Civ. Stat., 728.) This title was adopted by the Legislature as reported by the commissioners. Under these circumstances we feel constrained to adhere to the ruling in the case last cited, and to hold that a citation to the sureties was not necessary in this case.

For the error pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered May 29, 1888.