𝔚𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

NEBLETT v. SHACKLETON, SHERIFF, AND OTHERS.

January 12, 1911.

Absent, Harrison and Whittle, JJ.

1. APPEAL AND ERROR—*Final Decree—Order Dissolving Injunction—Code, Section 3435a.*—A decree which dissolves an injunction, dismisses the plaintiff's bill and awards costs against the plaintiff in favor of the defendant, and directs the sheriff to proceed upon the executions in his hands, which had been previously enjoined, as if no injunction had been granted, is in all respects a final decree from which an appeal lies to this court from a circuit court, notwithstanding the provisions of sections 3435a of the Code declaring that no appeal shall lie from an order dissolving and refusing to grant a further injunction.

2. HOMESTEADS—*Crops Grown on Land Set Apart.*—Crops raised in the ordinary course of husbandry upon land previously set apart as a homestead are exempt from levy to the same extent as the land itself.

Appeal from a decree of the Circuit Court of Lunenburg county. Decree for defendants. Complainant appeals.

*Reversed.*

The opinion states the case.

*W. E. Neblett, W. Moncure Gravatt* and *W. E. Nelson,* for the appellant.

*R. Turnbull & Son & Bell,* for the appellees.

KEITH, P.. delivered the opinion of the court.

It appears from the bill filed by the appellant in this case that he is a resident and citizen of the county of Lunenburg, a married man with a wife and several small children dependent upon him for support, and that he was entitled to the benefit and protection of the exemptions under the laws of Virginia in such cases made and provided; that he had. previously declared his intention to claim and has claimed the benefit of the homestead exemption, and on the 15th day of September, 1902, executed a deed in which the homestead exemption was set apart in certain property therein described, consisting of a tract of land in the county of Lunenburg containing about 500 acres, valued at $1,500; that this farm is still retained as his homestead, and that he has from year to year cultivated it, and in the year 1908 raised and housed about 7,000 pounds of tobacco, worth at least $900; that of this amount about one-fourth belonged to a colored tenant; that the entire crop was raised on the homestead farm in the ordinary course of cultivation and husbandry, and being so raised he claims that it was part and parcel of his homestead exemption, exempt from levy, seizure, garnishment or sale under any execution or process known to the laws of Virginia, and that he had the right to use it for the maintenance and support of his family.

The bill states that judgments at various times had been gotten in the courts of Lunenburg against appellant; that none of the judgments is upon a contract waiving the homestead exemption; and that on the 21st day of September, 1908, executions were issued upon these judgments, and were delivered to the sheriff of Lunenburg, who upon the 23rd day of September, 1908, levied on the tobacco before referred to, and made on each of the executions the following return: "Levied on 1,000 sticks of tobacco, the one-half interest of C. M. Neblett in share crop, and also on 2,650 sticks of said

C. M. Neblett's individual crop of tobacco found on the premises." He prays for an injunction restraining the sheriff of Lunenburg and the judgment creditors from selling this tobacco, grown and raised upon his homestead, alleging that there is no complete and adequate remedy at law, and if the sheriff is allowed to sell his tobacco under the executions he will be materially and irreparably injured. He therefore prays that A. B. Shackelton, sheriff of Lunenburg, and the several execution creditors may be made parties defendant, and that they be enjoined and restrained from selling the tobacco and collecting their judgments.

On the 9th day of October, 1908, an injunction was awarded in accordance with the prayer of the bill, to take effect upon the execution of the required bond, and to remain in force until Monday, the 16th day of November, 1908, unless previously enlarged or dissolved in the manner prescribed by statute in such cases made and provided.

At the November term of the court, the defendants appeared, demurred to the bill and filed their answers, and at the April term, 1909, the cause was brought on to be heard upon the bill and exhibits, the demurrer and answer of the defendants, the temporary injunction theretofore granted upon the motion of plaintiff to enlarge, and upon the motion of the defendants to dissolve the injunction, notice of motion to dissolve being waived. The court after mature consideration declined to enlarge the injunction, and "ordered that the bill of complainant be dismissed, and that the defendants recover of the said plaintiff their costs by them in this behalf expended. And A. B. Shackelton, sheriff, is hereby directed to proceed upon the executions in his hands as set out in the bill of the plaintiff just as if no injunction had been granted." To that decree an appeal was allowed.

The first point to be determined is the motion of appellees to dismiss the appeal as having been improvidently awarded,

the ground relied upon being that section 3435-a of the Code of 1904, provides: "Every court or judge authorized to award injunctions may, if in the opinion of the court or judge it be proper so to do, prescribe in the injunction order the time during which the injunction shall be effective, and after the expiration of such time the said injunction, unless previously enlarged as hereinafter provided, shall stand dissolved. The party to whom such injunction is awarded may within such time give notice to the adverse party or to his attorney at law or in fact of the time and place at which he will move the court or judge to whom the bill is addressed to enlarge such injunction, or to grant a further injunction, and such adverse party may within such time and after like notice move the said court or judge to dissolve such injunction, and on such motion by either of said parties the said court or judge may dissolve or enlarge said injunction or grant a further injunction. From any such injunction which shall stand dissolved as aforesaid and from any order dissolving such injunction and refusing to grant a further injunction there shall be no appeal; but if such order of dissolution and refusal be made by a circuit court or corporation court, or a judge thereof, application for an injunction may be made to a judge of the supreme court of appeals, as provided in section thirty-four hundred and thirty-eight of the Code of Virginia, who may award an injunction in accordance with that section."

The preliminary injunction was awarded on the 9th day of October, 1908, and was to continue until the 16th day of November, 1908, unless previously enlarged or dissolved. At the November term the defendants answered, and at the April term, 1909, the case came on to be heard upon the papers filed and upon the motion of the plaintiff to enlarge the injunction theretofore granted, and the motion of defendants to dissolve

that injunction; whereupon, the court entered an order dismissing the bill.

If the court had refused to enlarge the injunction, or had dissolved the injunction, and had done no more, it may be that the orders would not have been appealable under the section quoted—3435-a. But the court did not stop there. It dismissed the plaintiff's bill, awarded costs against him and in favor of defendants, and directed the sheriff to proceed upon the executions in his hands as if no injunction had been granted. This is in all respects a final decree, over which this court has jurisdiction by appeal.

This brings us to a consideration of the case upon its merits.

A homestead of the value of $1,500 was set apart in land upon which the plaintiff, his wife and infant children resided, and upon which, in the ordinary course of husbandry he raised and gathered a crop of tobacco. This tobacco was levied upon after it was severed, and the sole question for decision is whether or not it is protected from sale under the executions issued upon judgments founded upon contracts in which there was no waiver of the homestead exemption.

Our homestead laws rest upon article 14 of the State Constitution, which among other things declares, that "the provisions of this article shall be liberally construed," thereby embodying into the organic law a principle of construction which courts everywhere apply to such laws as being remedial in their character, and, therefore, to be liberally construed.

The courts of some other States and some text-writers hold, that "the usufruct of homestead property is not exempt because that which produces it is so. In the absence of any law creating the exemption, the income of such property, when it has taken independent form, is liable to the creditor. Were a different rule to prevail, the income could be capitalized and recapitalized from that one nucleus to the building up of collossal fortunes in defiance of debts past and future.

And what a door would be opened to frauds and perjuries, as each owner of a homestead would be tempted to allege and establish that all his estate, no difference how acquired, was but the increment of his own, or the homestead of some remote ancestor." This is the view presented at page 242 of Waples on Homestead and Exemption, and the decision cited in support of it is *Citizens' National Bank* v. *Green*, 78 N. C. 247.

Appellees rely also upon *Coates* v. *Caldwell*, 71 Texas 19, 8 S. W. 922, 10 Am. St. Rep. 725, in which it appears that a part of the cotton levied upon had been picked but not removed from the field, and a part had matured but had not been picked. It was held that the unpicked cotton was not the subject of levy, but that the cotton which had been picked could not be exempted.

The case of *Horgan* v. *Arnick*, 62 Cal. 401, seems to be to the same effect.

Unless these decisions are governed by something in the statutes of the States referred to, they strike us as being narrow and technical in the extreme. Of what value unpicked cotton could be to the householder it is difficult to perceive. As long as it remained in the field exposed to the weather and to be utterly wasted, it was protected by the homestead, but as soon as it was picked and assumed a useful and marketable form, the protection of the homestead was withdrawn and it became subject to seizure by the creditor.

It was pressed upon the court in *Citizens' Bank* v. *Green*, *supra*, that a homestead having been secured to the debtor by law, all income derived from its use is merely an incident which follows the principal and belongs absolutely to him, and may be used in improving the property or any other improvements, and that unless this be so the law rather discourages than invites improvement and enterprise by cutting off all inducements to industry, the legitimate rewards of which, when in excess of the exemption, would be seized and

sold by the creditor. That this is true cannot be successfully refuted, and the answer which was made by the court does not appeal to us. We have no fear that collossal fortunes in defiance of debts past or future will be built up upon the nucleus of incomes derived from a capitalization and recapitalization of the proceeds of crops derived from land set apart as homesteads.

The Supreme Court of Iowa has had this subject under consideration in *Morgan* v. *Rountree*, 88 Iowa 249, 55 N. W. 65, and also reported in 45 Am. St. Rep. 234, where the conclusion was reached, that moneys due for rent of a homestead are exempt from execution. In the course of the opinion the court said: "We think it is in harmony with the evident spirit and purpose of our statute to hold that the head of a family owning a homestead has a right to hold as exempt, not only the homestead and its use, but also crops or money which he may derive from its use while the property continues to be his homestead. If the homestead is terminated by abandonment or otherwise the exemption ceases. To hold that the owner of a homestead can only hold as exempt such proceeds of its use as the industry of himself or family has produced would be in many cases to deny the benefits of such exemption entirely. Take the case of an owner who cannot, from any cause, cultivate the homestead garden of forty acres, there is no good reason why he may not rent them to another, and hold the proceeds exempt for the use of his family. This case furnishes another apt illustration; also the case of one having spare room in the homestead, who takes lodgers, or one who, having no use for a stable on the homestead premises, rents it to another. We are clearly of the opinion that proceeds derived from the use of the homestead while it remains such are exempt to the head of a family. Whether property purchased with such proceeds, not otherwise exempt, would be subject to execution we do not determine."

This case derives additional value from having been annotated by Mr. Freeman, who in a note says in part as follows: "As to certain classes of homestead, the object of the statute is not restricted to affording a mere shelter of the family; and perhaps there is no class of which it may fairly be said that the statute did not intend the debtor to have the advantage accruing from the profitable use of the homestead for such purposes as it might be devoted to without impairing its homestead character or abandoning all exemption rights therein. The principal case goes further than any other falling within our observation in securing to a debtor the profits of his homestead, accruing when he was absent therefrom. We are not inclined to doubt or criticise it on that account. The claimant has a right to the full use of his homestead, and if he denies himself part of this right and thereby becomes entitled to compensation, as when he lets the whole, or some part of it, the courts in denying creditors the right to garnish, or otherwise subject to execution, the proceeds of such letting, inflict no wrong on the creditor. A case, equitably still less subject to doubt, arises when the owner of an agricultural homestead plants and harvests a crop which his creditor undertakes to seize in satisfaction of a debt. By not restricting such a homestead to the dwelling-house and its appurtenances, and in permitting it to extend over lands useful only for the production of crops, the legislature impliedly expressed an intention to include the beneficial use of those lands in the homestead exemption. It is true that in many instances there is an enumeration of the personal property which a debtor is entitled to retain as exempt from execution, and that the produce of the homestead may exceed this enumeration or be of a different character. Hence, some courts have denied that the produce of a homestead is exempt from execution, unless of a character or quantity which would exempt it though it had been acquired from any other source,

Others affirm that the exemption of a homestead extends to the crops grown thereon."

This case is one of first impression, we believe, in this State, and in passing upon it, it has been our object so to construe the Constitution and statutes bearing upon the subject as to advance their humane purpose. To deny to the homestead claimant exemption of the crops raised upon the homestead property would be injurious to the public, as tending to discourage good husbandry and the general improvement of the land set apart as a homestead, and would render the benefit intended to be secured to the head of the family for the support of those dependent upon him, in many instances, utterly vain and illusory.

We are, therefore, of opinion that the decree of the circuit court should be reversed, and this court will enter such decree as that court should have rendered.

*Reversed.*