## CRY v. J. W. BASS HARDWARE.
### (No. 3077.)

(Court of Civil Appeals of Texas. Texarkana. May 7, 1925.)

1. **Appeal and error ⬩1013—Finding of fact by trial court, supported by evidence, not set aside.**

Where there was evidence to support court's finding of amount of special damages allowable, Court of Civil Appeals is unauthorized, on conflicting evidence, to set finding aside.

2. **Homestead ⬩186—Special damages to crops held not subject to set-off in action on note.**

Where defendant pleaded that ungathered crops attached were exempt, as raised on homestead, and sought to recover their value, and special damage to crop from taking possession thereof, such special damages, being value of exempt property, was not subject to be set off, against plaintiff's judgment on note.

3. **Homestead ⬩83—Tenant may claim homestead in leased premises.**

A tenant may claim homestead right in premises let for a certain term under agreement evidencing intention to lease land.

4. **Homestead ⬩74—Generally ungathered crops raised on homestead, although matured, are exempt.**

Generally without exception, crops raised on homestead, and not gathered or severed from

the ground, although matured, are exempt from execution.

**5. Landlord and tenant ⬤⇒5(1)—Agreement held to create "landlord and tenant relation."**

In view of Rev. St. art. 5475, agreement for leasing land for share of crops *held* to create relationship of landlord and tenant, supporting claim of homestead by tenant.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Landlord and Tenant.]

**6. Landlord and tenant ⬤⇒323—Relation may exist, although rent payable in share of crop, if cultivator had exclusive possession for fixed time.**

Relation of landlord and tenant may exist, although rent is payable in share of crop, in case cultivator had exclusive possession of premises, with owner's assent for some fixed time.

**7. Homestead ⬤⇒83—Distinction between "tenant" and mere "cropper," as entitling tenant to homestead, stated.**

The distinction between mere "cropper" and "tenant," entitling tenant to homestead rights in premises, is that tenant has possession of premises for fixed time, exclusive of landlord, and mere cropper has not; latter's status being that of employee, and possession being in owner.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Cropper; Tenant.]

**8. Homestead ⬤⇒74—Crops severed from ground not exempt.**

Crops severed from ground, though raised on homestead, are not exempt from attachment.

Appeal from Rains County Court; J. S. Smiley, Judge.

Suit by J. W. Bass Hardware against D. O. Cry. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

The appellee brought the suit against the appellant on a promissory note and to foreclose a chattel mortgage on a certain cow. At the time of filing the suit on September 12, 1923, the appellee sued out a writ of attachment and caused it to be levied on the following:

"Eight acres ungathered corn in the field worked in 1923 by D. O. Cry. and 40 acres of ungathered cotton in the field of the said D. O. Cry raised during the year 1923."

The defendant pleaded that the cotton and corn were grown on his homestead, and were exempt from attachment, and in reconvention sought to recover special damages for the levy of the attachment.

It was admitted that the defendant executed the note sued on and that it was unpaid. The chattel mortgage on the cow was admitted. The court's findings of fact are as follows:

"I find that the plaintiff levied a writ of attachment upon all of the corn and cotton grown by the defendant for the year 1923; that said writ was levied on the 12th day of September, 1923. I also find that at the time of the levy there was 1381 pounds of said cotton that had been picked and was piled in the field. I find that none of the other cotton levied upon had been picked at said time, and I also find that the corn levied upon was in the field and had not been gathered.

"I find that at the time of the levy there was 300 bushels of corn and 8 bales of unpicked cotton in the field; that all of said corn and said 8 bales of cotton were ungathered, and were standing in the field at the time of the levy.

"I find that the defendant, D. O. Cry. was a married man, and at the time of the levy he was living upon the farm where the levy was made with his wife and one child; that said farm contained about 80 acres of land in the place upon which he was living.

"I find that the defendant, D. O. Cry, was a farmer, that he owned no other homestead, that he owned no land at the time of the levy, and that he had planted and cultivated the crop levied upon, and that besides making said crop he did no other work during the year 1923.

"I find that John Rivers owned the land upon which the defendant raised the crop which was levied upon, and that he was occupying the same under an agreement with the owner by the terms of which the owner was to furnish the land, teams, tools, and feed, and the defendant was to cultivate the land, and the crop was to be equally divided between the defendant and the said John Rivers.

"I find that the defendant moved with his wife and child upon this place on the 3d day of January, 1923, and continued to reside upon said place until after the levy was made, and that during said time he did not occupy any other place as a homestead.

"I find that, by the terms of the agreement between Rivers and the defendant, the place was to be planted in corn and cotton for the year 1923, but there were no limitations placed upon the defendant as to how many acres should be planted in corn or how many should be planted in cotton.

"I find that, by reason of the levy of the writ of attachment the defendant was prevented from gathering his crop; that, by reason of said writ being levied, the defendant was stopped from gathering any part of his crop; that, soon after the writ was levied, an overflow spread out over the field and damaged defendant's crops to the extent of $200; that if the writ had not been served, the defendant could have and would have gathered part of his crops before said overflow came; that he could and would have gathered 3 bales of cotton before said overflow.

"I find that neither the corn nor cotton levied upon with said writ of attachment was exempt to the defendant, but I find that both said corn and cotton was subject to be levied upon with said writ of attachment."

### Conclusions of Law.

"I conclude as a matter of law that the plaintiff is entitled to a judgment for the amount

---

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of his note, principal, interest and attorney's fees, together with a foreclosure of his mortgage upon one cow and calf, described in said mortgage, together with a foreclosure of his attachment lien upon the corn and cotton levied upon.

"I conclude as a matter of law that the crops levied upon not being exempt property, that the plaintiff is entitled to offset the damages allowed defendant with the judgment which plaintiff recovered herein against the defendant."

It is not shown by either the return of the officer or the evidence that the "1,381 pounds" of picked cotton was levied upon.

T. R. Potts, of Emory, and Jones & Jones, of Mineola, for appellant.

Rodes & Carter, of Emory, for appellee.

LEVY, J. (after stating the facts as above). [1, 2] The appellant pleaded that the ungathered corn and cotton attached were exempt as raised on a homestead, and sought to have "the cotton and corn restored to his possession," or, in the alternative, to recover their value. Appellant also sought to recover special damages occasioned to the crop as resulting from wrongfully taking possession thereof. The propositions present, in effect, the two points in view: That (1) the special damages allowed by the court were inadequate; and (2) the crops being exempt from forced sale, the attachment should have been vacated and the possession of the corn and cotton restored to appellant, or judgment for their value allowed. As there is evidence to support the court's finding of the amount of special damages allowable, this court would not be authorized, in view of the conflicting evidence, to set that finding aside. Such damages, being the value of exempt property, was not a subject of offset, and in this respect there was error in the judgment.

[3, 4] The next proposition, that the crops levied on were exempt, as raised upon homestead premises, should be sustained, we think, in view of the evidence. The attachment should have been vacated and a judgment entered for appellant for the specific property or its value. It is the settled law that a tenant, as appellant was, may claim a homestead right in premises let for a certain term under an agreement evidencing the intention to lease the land. Moore v. Graham, 29 Tex. Civ. App. 235, 69 S. W. 200; Phillips v. Warner, 4 Willson, Civ. Cas. Ct. App. § 147, 16 S. W. 423; Brewing Ass'n v. Smith (Tex. Civ. App.) 26 S. W. 94. And generally, without exception, the crops raised upon a homestead and not gathered or severed from the ground, although matured, are exempt from execution or attachment. Coats v. Caldwell, 71 Tex. 19, 8 S. W. 922, 10 Am. St. Rep. 725; Allen v. Ashburn, 27 Tex. Civ. App. 239, 65 S. W. 45; Speer on Marital Rights, § 402.

[5, 6] By the terms of agreement, as found by the court, between the owner of the land and the appellant, the owner of the land was to furnish the land, teams, and tools, and feed for the teams, and the appellant was to farm the land in cotton and corn. When matured and gathered, "the crop was to be equally divided between the parties. The "one-half of the crops" was to be paid "as rents" to the owner of the land. It was further agreed that the appellant was to have "full charge of the farm" and be free to determine "how many acres should be planted in cotton and how many should be planted in corn." The appellant was "to have the farm for the year 1923," beginning January 3, 1923. It appears that the particular farm consisted of "79 9/10 acres of the N. G. Crittenden survey," and was inclosed with a fence. Fifteen acres was set off as a pasture, and the balance was all tillable land. There was a house on the land, and the appellant was to "live there with his family." Appellant and his wife and one child occupied the house. Appellant planted 15 acres in corn, and about 60 acres in cotton, and cultivated it without direction or supervision of any one. Appellant, it appears, had exclusive possession of the farm, and the landowner was "not on this farm more than two or three times during the time, and before the levy was made." In the light of the agreement and the facts, all the elements appear necessary to constitute a lease or letting of the land itself for the entire period of the year 1923, and to create the relationship of landlord and tenant between the parties. The share of the crops, coming to the landowner, was to be delivered to him "as rents," and the appellant was to have "full charge" or exclusive possession of the farm, free of control of the owner, for the period of a year. The appellant's use of the land was not restricted, except to the extent that it should be planted in "corn and cotton" in such proportions and acreage as the appellant himself might determine. According to settled rules of law the relation of landlord and tenant may exist, although the rent is payable in a share of the crop, even to the extent of one-half, in case the cultivator of the land was to have and to hold the exclusive possession of the premises, with the assent of the owner, for some fixed time. 38 Cyc. 123; 24 Cyc. 1464; 36 C. J. p. 634; 16 R. C. L. § 58, p. 583.

It seems to appear that the court was of the opinion that since the appellant was to have the farm on "halves," with teams and tools furnished him, the case came within and was ruled by the following cases: Webb v. Garrett, 30 Tex. Civ. App. 240, 70 S. W. 992; Ellis v. Bingham (Tex. Civ. App.) 150 S. W. 602; Watson v. Schultz (Tex. Civ. App.) 208 S. W. 958. There is a substantial difference between the situation in those cases and the situation in the present case. In those cases the parties were each, as de-

termined, in the relation "merely of a cropper" with no estate in the land, and not a tenant having a substantial interest in the land. In the Ellis Case, supra, Ellis was to work the land "under a boss," who "controlled me all the way through in working and gathering and disposing of the crop," and he was to "have the house for the purpose of using while he worked the land, the same as the woodcutters." Such contract, as determined, was "merely a personal engagement" of Ellis warranting the conclusion reached by the court that Ellis was a mere cropper, as it is termed, and had no estate in the land, sufficient to form a homestead right. In the Webb Case it was determined that under the agreement Webb "did not have in the premises a possessory interest sufficient to base a homestead right upon," because the land was the owner's "homestead," and she, by intention of the parties, expressly reserved the right of possession and granted to Webb only the privilege or license of ingress upon the land to cultivate it. Those cases do not hold, and it was not intended to so hold, that a person renting land for a share of the crop, or "on halves," could in no event be legally classed as a tenant. The distinction between those cases and the present one is found in the legal distinction made between a tenant and a mere cropper.

[7] The distinction between a mere cropper and a tenant, entitling the tenant to a homestead right in the premises, is clear. One has a possession of the premises for a fixed time exclusive of the landlord, the other has not. The possession of the land is with the owner as against the mere cropper, because a mere cropper is in the status of an employee, one hired to work the land and to be compensated by a share of the crop raised, with the right only to ingress and egress on the property. This is not so as to the tenant, who has a substantial right in the land itself for a fixed time. Quoting from 12 Cyc. 979:

"The intention of the parties as expressed in the language they have used, interpreted in the light of the surrounding circumstances, controls in determining whether or not a given contract constitutes the cultivator a cropper. If the language used imports a present demise of any character by which any interest in the land passes to the occupier, or by which he obtains the right of exclusive possession, the contract becomes one of lease, and the relation of landlord and tenant is created. If, on the other hand, there be no language in the contract importing a conveyance of any interest in the land, but by the express terms of the contract the general possession of the land is reserved by the owner, the occupant becomes a mere cropper."

See, also, 17 C. J. p. 382; 8 R. C. L. § 19, p. 373.

If the contract becomes, as here, one of lease or renting for a year, with exclusive possession in the tenant, it is immaterial whether the landlord is to receive as rent one-half of a third and fourth of the crops raised. The factor is "the right of exclusive possession;" as the legal effect of the contract, and not "the shares of the crop" only. In other words, when the contract evidences the intention, as here, of "renting the land," and not merely a hiring "to work the land," the relation of landlord and tenant legally exists, for the statute expressly authorizes a landowner to "rent" his land and receive his rents in shares of the crop, and gives him a statutory landlord's lien therefor. Article 5475, Rev. Stat.

[8] It does not affirmatively appear that the 1,381 pounds of gathered cotton was levied upon; but, if it had been, the attachment lien thereon would have been valid, since, being severed from the ground, it was not exempt.

The judgment, we conclude, should be reversed and here rendered as follows: The appellee to recover his debt sued for, with foreclosure of the chattel mortgage lien on the cow, and the costs of the trial court, except the costs of the attachment proceeding, which are taxed against him, the writ of attachment is vacated, and the appellant to recover the specific crops levied on, if available for delivery, together with the $200 as damages; but, if such property be not available for delivery, then, in the alternative, the value of his interest in the ungathered corn and cotton levied on, which, as found by the court, would be one-half of 8 bales of seed cotton of the value of $608, and one-half of 300 bushels of corn of the value of $150, aggregating the sum of $758, which amount includes and is not additional to the $200 allowed as the value of the part destroyed and injured by overflow, the appellee to pay costs of the appeal.