**In re Michael Don HARDAGE, Debtor.**

**Bankruptcy No. 186–10168.**

United States Bankruptcy Court,
N.D. Texas,
Abilene Division.

Feb. 4, 1987.*

---

* This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bank-

ruptcy Rule 7052 which is made applicable to Contested Matters by Bankruptcy Rule 9014.

Charles Dick Harris, Harris & McBeath, P.C., Abilene, Tex., for debtor.

Jeff Johnson, Abilene, Tex., for Bank.

Thomas Wheeler, Wagstaff, Alvis, Stubbeman, Seamster & Longacre, Abilene, Tex., Trustee-in-Bankruptcy.

## MEMORANDUM OF DECISION

JOHN C. AKARD, Bankruptcy Judge.

This matter is before the Court on the Debtor's Motion to Determine Estate's Interest in Crops.

### Facts

The Debtor filed for relief under Chapter 7 of the Bankruptcy Code on July 8, 1986. In his Statement of Affairs he listed his occupation as a "Dozer Operator" and stated that he was employed by Neal Dozer Service of Vernon, Texas. The Schedules indicate that the Debtor lives in a rural area and he claims 133 acres of land in Wilbarger County, Texas, which he values at $78,000.00 as his homestead.

Between June 29 and July 2, 1986 (and thus prior to the filing of the Chapter 7 Petition) the Debtor planted cotton on 68 acres of the 133-acre homestead and on 98 acres of land which he leased from his aunt (the "Muller Place").[1] The Debtor indicated that the rental was one-fourth of the cotton crop, the standard rental in this part of Texas.

The balance of the homestead acreage and the balance of the Muller Place are used either for pasture or for raising grain. All of the testimony presented related to the cotton crop, so it appears that neither the Trustee, nor the Herring National Bank

(Bank) makes any claim to the grain or to the other crops grown on the pasture land.

The Debtor estimated his cotton crop expenses prior to the filing of the Chapter 7 proceedings at $3,200.00, incurred in connection with soil preparation for planting, seed and herbicide purchases and expenses in connection with planting and the application of the herbicides. The Debtor stated that the expenses could be equitably prorated on a per-acre basis. Further, he estimated that expenses incurred postpetition and prior to harvesting totalled $4,000.00. He anticipated harvesting expenses to be another $8,000.00. He did not estimate the value of the cotton crop.

The Trustee-in-Bankruptcy received three commodity certificates issued by the Commodity Credit Corporation payable jointly to the Debtor and the Trustee. These are certificates commonly known as Payment-in-Kind Certificates (PIK Certificates). The Debtor testified that he had initially contacted the appropriate agencies concerning these certificates in April or May, 1986, but that he did not formally qualify for the program until July 13, 1986. He qualified by plowing up some acreage previously planted. Apparently that acreage was in excess of the acreage discussed at the hearing on this matter.

The Trustee's certificates are for $718.53 and $559.25, representing payment in kind for cotton, and $127.90 representing payment in kind for grains. By agreement of the parties, the certificates were cashed and the funds are held by the Trustee.

The Trustee-in-Bankruptcy took the position that the estate had an interest in the "Debtor's 1986 farming crop, crop proceeds, and all other appurtenances thereto." The Bank offered the Trustee $500.00 for such interest. On October 13, 1986, the Trustee issued a Notice of Intent to Sell the interest. Apparently negotiations thereafter ensued between the Trustee, the Debtor and the Bank. Ultimately, the interest was sold by the Trustee to the Bank

---

1. There was some confusion in the testimony as to the number of acres planted in cotton. These figures are taken from the Debtor's brief.

for $2,150.00, and the Trustee issued a Bill of Sale without warranty to the Bank on November 6, 1986.

On November 10, 1986, the Debtor filed an Amended Exemption Election in which added an additional "67 acres of unmature cotton pursuant to leasehold interests" on the Muller Place to his exemption claim. There is no Certificate of Service attached to the Amended Exemption Election so the Court is unable to determine who, if anyone, received a copy of that election. The Debtor also filed his Motion to Determine Estate's Interest in Crops on the same date.

### Discussion and Conclusions

The Texas Constitution and Statutes allow a family to claim as exempt a rural homestead of not more than 200 acres, including all of the improvements located thereon. TEX. CONST. art. XVI, §§ 50 and 51 and TEX.PROP.CODE ANN. § 41.-001 (Vernon 1984). A single adult is limited to not more than 100 acres for a rural homestead. TEX. PROP. CODE ANN. § 41.001(a)(2) (Vernon 1984). There was no discussion at the hearing or in the pleadings as to whether the Debtor was a single adult, so apparently he is either married or has dependents so as to qualify for the "family" exemptions.

To qualify as exempt under Texas law, the property must be occupied as the homestead; however, it appears that the Debtor need not be engaged in the business of farming. *Braden Steel Corp. v. McClure*, 603 S.W.2d 288 (Tex.Civ.App.—Amarillo 1980, no writ). (The president of a business corporation was allowed a rural homestead.)

A tenant may claim a homestead right in land leased for a definite term, even if the rent is a portion of the crop. The tenant must be entitled to possession of the land exclusive of the landlord and the landlord must not exercise control over the way the crops are grown. In other words, the homestead claimant must be a "tenant" and not a "cropper." *Cry v. J.W. Bass Hardware*, 273 S.W. 347 (Tex.Civ.App.— Texarkana 1925, no writ).

Unmatured crops growing on the homestead are exempt. The Courts have reasoned that the homestead exemption must include not only the land itself, but everything "absolutely essential" to its beneficial enjoyment. *Alexander v. Holt*, 59 Tex. 205 (1883). If the creditor were to levy on unmatured crops, the levy would require some going upon the land which would be an invasion of the homestead right and the Courts feel that this cannot be permitted. *Coates v. Caldwell*, 71 Tex. 19, 8 S.W. 922 (1888).

The Debtor is required to claim his exemptions in Schedule B–4 of the Schedules filed by the Debtor at the time the bankruptcy proceeding is commenced. Bankruptcy Rule 4003(a). Liberal amendment is allowed by Bankruptcy Rule 1009, which states that the Schedules "may be amended by the debtor as a matter of course at any time before the case is closed. The debtor shall give notice of the amendment to the trustee and to any entity affected thereby." *Id.* The records in this case do not reveal that the Debtor gave notice of the amendment to the Trustee or to the Bank, but the Debtor's Motion to Determine Estate's Interest in Crops was filed on the same date as the amendment and copies were served on the Trustee and the attorney for the Bank.

■ There is, however, a limitation on the Debtor's right to amend upon a showing of a Debtor's bad faith or of prejudice to creditors. *Doan v. Hudgins (In re Doan)*, 672 F.2d 831 (11th Cir.1982). *See also In re Eldridge*, 15 B.R. 594 (Bankr.S. D.N.Y.1981). This standard of review has recently been adopted by the Fifth Circuit. *Stinson v. Williamson (In re Williamson)*, 804 F.2d 1355 (5th Cir.1986) at 1358. In order to prohibit the Debtor from filing an amendment to his exemptions, the Fifth Circuit requires a showing of "harm to the creditor's litigating posture because of some detrimental reliance on the debtor's initial position." *Id.* at 1358.

■ Where the Debtor files his Petition in Bankruptcy, all of his assets pass to the Trustee, subject to the Debtor's allowance of properly claimed exemptions. Part of the Debtor's assets in this case were the crops planted prior to the filing of the Petition. In reliance on the exemptions claimed (and with full knowledge of the Debtor, who participated in the bidding), the Bank purchased the estate's interest in the crops for a valuable consideration. The Debtor cannot now change or add to his exemptions to the detriment of the Bank.

### Did Title to the Crops Pass to the Trustee?

■ Upon the filing of the Bankruptcy Petition, the Debtor's interest in all assets passes to the Trustee subject to properly claimed exemptions. In cases involving prepetition liens on crops, the Courts have consistently held that:

... if the crops subject to a pre-petition security interest are planted before the commencement of bankruptcy proceedings, then the creditor's lien attaches to crops and proceeds realized post-petition; however, ordinarily, a pre-petition security interest will not cause a lien to attach to crops which are not planted by the debtor until after he or she files for bankruptcy relief.

*Hugo v. United States (In re Michael J. Hugo )*, 50 B.R. 963 (Bankr.E.D.Mich.1985) at 967. *See also First State Bank of Abernathy v. Holder (In re Nivens )*, 22 B.R. 287 (Bankr.N.D.Tex.1982); *In re Vanasdale*, 64 B.R. 92, 14 Bankr.Ct.Dec. (CRR) 1125 (Bankr.N.D.Ohio 1986). The Court can see no distinction between the lien on crops acquired by creditors prepetition and the title to crops acquired by the Trustee on the filing of the Petition; the crops in existence on the date of filing pass to the Trustee as part of the assets of the estate.

■ Since the Debtor cultivated the crops postpetition, the Debtor is entitled to the costs of maintaining, harvesting and marketing them pursuant to 11 U.S.C. § 506(c). Some cases disallow a recovery of prepetition expenses (*Randall v. Bank of Viola (In re Randall )*, 58 B.R. 289 (Bankr.C.D.Ill.1986)), while others allow recovery of those prepetition expenses (*Vanasdale, supra* ). The Court believes that the better position, particularly where the crops pass to the Trustee-in-Bankruptcy, is to allow the Debtor to recover only for postpetition expenses.

■ The Court requested the Debtor to submit a full statement of receipts and expenses concerning the cotton crop. The material attached to the Debtor's brief does not contain full information and is not intelligible to the Court. The Debtor's brief does have a sheet attached to it which the Debtor asserts was prepared by the Agricultural Stabilization and Conservation Service (ASCS) in Wilbarger County, Texas. That sheet assumes cotton production in Wilbarger County of 250 lbs. per acre at 60¢ per pound income, which includes supplemental ASCS payments. This would be a total income of $150.00 per acre. The costs shown on that sheet indicate a high of $144.50 per acre to a low of $117.50 per acre which include living expenses for the farmer and labor. The average of those costs is $131.00 per acre. In both estimates, $12.00 per acre is listed as land preparation costs and seed costs are shown at $8.00–$15.00 per acre or, an average of $11.50 per acre. When the land preparation cost of $12.00 and the average seed cost of $11.50 are deducted from the average cost of $131.00, the resulting figure is $107.50 per acre representing the postpetition costs with respect to the crop. When these postpetition costs are balanced against the $150.00 per acre income, the Bank (as the assignee of the Trustee) is entitled to $42.50 per acre for the 98 acres or a total of $4,165.00.

### Government Payments

■ The ASCS payments are not the same as the PIK payments which are issued by the Commodity Credit Corporation. The Trustee received and deposited payments of $127.90; $559.25 and $718.53 for a total of $1,405.68 to his account. The

testimony did not reveal whether the acreage not planted in order to entitle the Debtor to the PIK payments was on the homestead or on the leased land. Absent that testimony, the Court will divide the PIK payments on the same ratio as the cotton, namely, 68/166 to the Debtor and 98/166 to the Bank. The Debtor attempted to show that the final action in order to entitle him to the PIK payments was made after the filing of the Bankruptcy Petition. However, the Court finds that he performed sufficient acts prepetition to make the PIK payments an asset of the estate. The PIK payments are merely a substitute for crops, and should be treated in the same manner as crops. *In re Nivens, supra.*

Order accordingly.