## In re HOAG.

(District Court, W. D. Wisconsin.   November 20, 1899.)

### No. 92.

**BANKRUPTCY—EXEMPTIONS—GROWING CROPS ON HOMESTEAD.**

Where the state statute exempts from execution a homestead of 40 acres of land used for agricultural purposes, a bankrupt, who has had such homestead set apart to him by his trustee, cannot claim, as exempt, in addition thereto, the crops growing on the land at the time of the filing of his petition in bankruptcy.

In Bankruptcy.   On review of decision of referee in bankruptcy.

Whitehead & Matheson, for bankrupt.
William G. Wheeler, for mortgagee.
J. J. Cunningham, for trustee in bankruptcy.

BUNN, District Judge.   This is an appeal from an order of the referee denying the claim of the bankrupt to have set off by the trustee as exempt property all the crops raised upon his homestead of 40 acres, in addition to the exemptions of specific personal property provided by statute.   The bankrupt filed a voluntary petition in bankruptcy in June, 1899, asking for leave to turn over to a trustee for the benefit of his creditors all his property not exempt by law, and to be discharged from the payment of his debts.   The petition of the bankrupt shows that at the time he filed his petition there was growing on his homestead $9\frac{1}{2}$ acres of corn, 8 acres of oats, and 10 acres of hay; that the remainder of the homestead is occupied with the garden, pasture ground, and buildings.   The trustee set apart for a year's support of the bankrupt and his family and stock 200 bushels of corn, 200 bushels of oats, and 8 tons of hay, and scheduled the balance of the crops grown for sale.   It is conceded that the trustee has set apart all that the statute would allow, unless the crops growing on the homestead are exempt, in addition to other statutory provisions, as a part of the homestead.   But he claims these crops in addition to all the other exemptions of personal property.   The referee decided that the claim could not be allowed, and this appeal is from the order denying the same.

The statute of this state is very liberal in its provisions for the debtor against seizure and sale upon execution, and, were it not for some decisions in other states,—notably by the supreme court of Iowa in Morgan v. Rountree, 55 N. W. 65, Cox v. Cook, 46 Ga. 301, and Alexander v. Holt, 59 Tex. 205,—I would think this not so much a question of the proper construction of our statute (for its provisions seem to be clear), as it is whether the court will allow to the bankrupt who seeks to be discharged from the payment of his debts a large amount of personal property over and beyond what the legislature, in its wisdom, has thought proper to exempt. And the only reason that I could suggest why, in the 50 years during which the exemption laws of Wisconsin have been administered

by the state courts, this question has never been decided, or, so far as is known, ever been made in the courts, is that no one has had the confidence or hardihood to make the claim. The question, as one of the proper construction of the statute, cannot be doubtful unless we are to wholly disregard every other rule of construction except the one to construe the law liberally in favor of the debtor. The exemptions of personal property under the statute are substantially these, so far as these provisions can have any bearing upon this case: The Family Bible, family pictures, and school books; the library of the debtor; a pew in a church; one gun; all wearing apparel; all beds, bedsteads, and bedding; all stoves; all cooking utensils, and all other household furniture, not exceeding $200 in value; two cows; ten swine; one yoke of oxen and one horse or mule, or, in lieu of them, two horses or two mules; also ten sheep, and the wool from the same, either in raw material or manufactured into yarn or cloth; the necessary food for all the stock so mentioned for one year's support, either provided or growing or both, as the debtor may choose; also one wagon, cart, or dray, one sleigh, one plow, one drag, and other farming utensils, including tackle for teams, not exceeding $200 in value; and provisions for the debtor and his family necessary for one year's support, either provided or growing or both, and fuel necessary for one year; also the tools, implements, and stock in trade of any mechanic, miner, merchant, trader, or other person used and kept for the purpose of carrying on his trade or business; all sewing machines owned by individuals, and kept for the use of themselves or families. There are some other special provisions for particular classes of persons, not necessary to state. The provision for the exemption of a homestead is as follows: A homestead, to be selected by the owner thereof, consisting, when not included in any city or village, of any quantity of land, not exceeding forty acres, used for agricultural purposes, and, when included in any city or village, of any quantity of land, not exceeding one-fourth of an acre, and the dwelling house thereon, and its appurtenances, owned and occupied by any resident of this state, shall be exempt from seizure or sale on execution, from the lien of every judgment, and from liability in any form for the debts of such owner. Such exemption is not impaired by temporary removal with intention to reoccupy, nor by a sale, but shall extend to the proceeds derived from such sale while held with the intention to procure another homestead therewith, for a period not exceeding two years. These provisions are quite specific, and at the same time very liberal. The homestead, consisting of 40 acres of land, with the dwelling house thereon, without regard to value, is exempt from seizure and sale. This provision secures the debtor a home against the exaction of creditors. The provision for exemption of cows, teams, sheep, swine, and provisions for a year's support for these and for the debtor and his family secure to him personal property sufficient for his subsistence from year to year. If it had been the intention of the legislature, in addition to these specific provisions for the debtor's support, to exempt all the crops grown upon the

homestead, it could have made that manifest by four or five additional words. "The homestead and the products thereof," or "the crops grown or growing thereon," would have made the intention manifest. And it seems somewhat inconsistent with the other specific provisions in regard to the homestead that the legislature should not have used some such language if this had been its intention. If we are not wholly to disregard the maxim, "Expressio unius est exclusio alterius," the extended and minute enumeration of exempt personal property intended for the support and maintenance of the debtor and his family and stock contained in the statute would seem to exclude the idea that the legislature could have intended to exempt large amounts of other personal property not so enumerated. I understand counsel for the bankrupt to claim the crops as exempt, on the ground that they are attached to the soil, and so a part of the realty, at the time of the filing of the petition. I think it would be a constrained construction to so hold. Growing crops are personal property in the law. Although, on a sale of the land without reservation, they go with the land, because the implication is clear that such is the intention, they pass by a bill of sale or chattel mortgage without seal, and, even by oral agreement, may be levied upon by execution or attachment as personal estate, and on the death of the owner descend to his personal representatives, and not to the heirs. It is also claimed that the crops are exempt as being the product of the homestead, which is itself exempt. If this be so, it would follow that cattle, horses, and other stock grown on the homestead are also exempt for the same reason. So that it would be possible for a thrifty debtor with an eye to business to easily double or quadruple the exemptions enumerated by statute, and, instead of being allowed provisions for one year's support, claim two, and, instead of having two cows, ten sheep, and ten swine, have allowed him six cows, forty sheep, and as many swine, with grain and provisions for a year's support. Or he could plant all that part of the 40 acres not required for buildings and outhouses to garden vegetables and fruit, employ fifty or a hundred men to tend it, and put in thousands of dollars of capital, and make large profits, and yet claim the entire produce as exempt, in addition to the enumerated statutory exemptions which could be taken from other property. If such a bountiful exemption had been intended by the legislature, it is fair to presume that it would not have left so important a provision to implication.

As stated by the referee in his opinion, the statutes of Georgia and Texas are so unlike our statute as to make the decisions in these states of little value here. In the Northern district of Texas, notwithstanding the decisions of the state court, it was held in Re Coffman (D. C.) 93 Fed. 422, which was similar in its facts to the case at bar, that a bankrupt cannot hold as exempt crops growing on the homestead at the time of the adjudication in bankruptcy. This decision is in line with the decision of the supreme court of California in Horgan v. Amick, 62 Cal. 401, and Erickson v. Paterson, 47 Minn. 525, 50 N. W. 699, and the recent decision of the

United States district court of Oregon in Re Daubner (D. C.) 96 Fed. 805.

In Morgan v. Rountree, supra, the question certified to the su preme court of Iowa by the trial judge was this: "Where the judg- ment debtor, who is a resident of this state, and the head of a family, is temporarily absent from her homestead for one year, for the purpose of educating her daughter, and voluntarily executes a lease of the homestead to a tenant during the said period, are mon- eys due to the debtor from the tenant for the rent exempt from execution against the judgment debtor?" The court answers this question—which was the only one before it in the case—in the af- firmative. The question there decided is not before this court, though the Iowa case is the one perhaps mainly relied upon by counsel for the bankrupt. That court, after deciding the one ques- tion before it, proceeded to say that the growing crops would also be exempt,—a question which is now squarely before this court under a statute somewhat similar, but was not in the case before that court at all. The court regrets, in the opening line of its de- cision, considering the importance of the question certified, that the case was argued by counsel only upon one side. That is, I believe, always considered as desirable; and possibly, if the court could have had the benefit of argument upon both sides of the case, it might have come to a different conclusion, or, if not that, would have been enabled to keep more closely to the one issue submit- ted. It may be that the question submitted was correctly decided. That question is not before this court. Leaving the homestead for temporary purposes, as she might do, the rent reserved represent- ed the rental value of realty which was itself exempt by law. But growing crops represent much more, to wit, capital and labor ex- pended in planting and tending the crop, which might be many times the rental value. I do not, therefore, consider the case an authority in point, and, if it were, I should not feel at liberty to follow it.

Some cases decided by the supreme court of this state have been cited, but it is evident that this question has never been before it. Among other cases, that of Phelps v. Rooney, 9 Wis. 70, is referred to. This is a leading case upon the point involved, though made by a divided court, Chief Justice Dixon delivering two vigorous dis- senting opinions. Rooney owned a building upon one of the prin- cipal business streets in Milwaukee, which was built for a store. He leased the basement and main floor for a store at a yearly rent of $1,500, but resided, with his family, in the upper stories of the house. The question litigated was whether such a building could be regarded as the dwelling house of the debtor. The chief justice thought you might as well say that, if a man lived on a steamboat it made the steamboat his dwelling house, or if Diogenes lived in a tub it made the tub a dwelling house. But a majority of the court held it to be a dwelling house, and the entire building and ground exempt, and that the owner could not alienate the same by mort- gage without the consent of the wife. There was no question in the case as to whether the rent received or due would be exempt

from execution or garnishment, nor can I find that a question like the one decided in the Iowa case has ever been adjudicated in this state. The order of the referee is affirmed.