### MOORE & ROLLOW v. J. W. GRAHAM.

#### Decided May 28, 1902.

**1.—Homestead—Title.**

Ownership of the fee is not essential to the existence of the homestead, which may even be of such nature as to be a mere chattel, or a leasehold interest.

**2.—Same—Ungathered Crops.**

Ungathered crops growing upon a homestead are exempt from execution, since a levy thereon and gathering them would involve an invasion of the homestead right.

**3.—Same Measure of Damages—Conversion.**

Where ungathered crops on a homestead are unlawfully levied on and appropriated, the value of the crops affords the measure of damages, so far as the mere conversion is concerned.

**4.—Same—Evidence—Crop Not Matured.**

Evidence that a crop of cotton was thrice picked over after a levy on it, sufficiently shows that the crop was not matured at the date of the levy, and warranted the court in refusing to charge upon the theory that the crop was matured and therefore subject to levy.

**5.—Homestead—Leased Tracts Not Contiguous—Designation.**

A homestead may consist of several separate parcels of leased land, and it is not necessary that they should be contiguous, or be acquired at the same time, or from the same landlord; and there need not be such use of the subsequently leased tract as would amount to an original designation of a homestead.

**6.—Same—Damages—Consent to Subletting.**

Where the defendant claimed damages for a levy on his crops, on the ground that they were a part of his homestead, which was on leased premises, the plaintiff could not, in defense, raise the issue of whether defendant, who was a sublessee of the land, was occupying with the consent of the owner.

**7.—Lease—Subletting—Ratification.**

Where a sublessee enters and cultivates a crop and the owner thereafter claims a part of the gathered crop as rent, there is a sufficient ratification of the subletting.

**8.—Same—Homestead—Rents.**

Where crops levied upon by attachment and converted by the plaintiff were exempt from execution, and the defendant recovered in reconvention therefor no more than his actual damages, the amount so recovered by him could not be offset by the judgment for plaintiff on his debt, since if this could be done, the exemption would be rendered ineffective.

Appeal from the County Court of Collin. Tried below before Hon. J. H. Faulkner.

*Abernethy & Beverly,* for appellants.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by appellants on a promissory note to recover a balance of $552.53. At the time the suit was instituted an attachment was sued out and levied upon twenty-five acres of cotton growing upon premises leased by appellee.

The appellee, defendant below, plead general denial; payment of the note; that the cotton levied on was growing on his homestead, and exempt from execution; that it had been converted by appellants to appellee's damage in the sum of $600; and that the writ of attachment was wrongfully and maliciously sued out, for which he asked in reconvention exemplary damages.

The case was tried by a jury, who returned a verdict in favor of appellants for $486.71, the amount due on the note, and also in favor of appellee for $586.17, actual damages, and $51.61 exemplary damages. Upon this verdict judgment was rendered for the respective parties. After its rendition the appellee remitted $100 of the actual and all of the exemplary damages, the aggregate amount of the remittitur being $151.66. The judgment provides that the amount recovered by appellee can not be offset by the sum recovered by appellants, for the reason that appellee's judgment is for damages arising from the attachment of his exempt property. From this judgment Moore & Rollow have appealed.

The facts show that at the time the suit was instituted and the writ

of attachment sued out, the appellee was the head of a family; that he owned no land in fee simple; that he was a farmer by vocation, and was living and farming for the support of his family upon rented premises; that the house occupied by himself and family was situated on a different tract of land from that on which the cotton levied upon was grown, the two tracts being about a quarter of a mile apart, and rented at different times from different parties, but that both tracts were occupied and used by him and his family for the purposes of a home, and that when so used the appellants procured an attachment to be sued out and levied upon the cotton growing upon the twenty-five acres, which was picked and ginned at the instance of the officers making the levy, and sold by virtue of an order of court obtained by appellants. The cotton at the time of the levy was reasonably worth $486.17.

Ownership of the fee is not essential to the existence of a homestead. The home may be even of such a nature as to be mere chattel, and any sort of title, whether legal or equitable, will support a homestead claim. Spear., Law of Marr. Wom., sec. 252.

Upon levying upon an unsevered crop, the officer must either take possession of the land to gather the crop (as was done in this instance), or must sell it ungathered. In the latter case the right would pass to the purchaser at the sale to go upon the land and take off the crop. In order to complete the sale, or to make it effective, possession must be taken of the land upon which the crop is grown, and for a time at least an officer or purchaser must exercise dominion and control of it. This, says the Supreme Court, is an invasion of the homestead right, and can not be permitted. Coates v. Caldwell, 71 Texas, 22. Crops upon a homestead, while growing, are exempt from execution. 59 Texas, 205. The occupation by the head of a family of a homestead for agriculture is for the purpose of realizing therefrom something to support himself and family rather than to employ it as a mere place wherein to shelter him and them from the winter's cold or summer heat. If the exemption extended to him does not include an ungathered crop, whether matured or not, it is of no benefit to the owner. In such an event he and his wife and children would only have the privilege of standing in the house or yard and seeing an officer invade their field and take possession of, by virtue of an attachment or execution, the crops growing or standing thereon, and appropriate the fruits of their toil without any benefit from what the law was intended to secure them. Freeman on Ex., 3 ed., sec. 247a.

The jury, by the charge of the court, were only allowed to find the actual damages plead by appellee in reconvention, in the event it appeared from the evidence that the crop levied upon was standing or growing upon his homestead. If it was not on his homestead, according to the charge, its seizure and appropriation by the constable, by virtue of the attachment, furnished appellee no grounds for damages. Therefore it was not error for the court to refuse to instruct the jury, at appellant's request, "that growing crops, when ready to be harvested, are not in them-

selves exempt from levy, but when such crops are on a homestead they can not be levied on."

Appellants admit that the entrance on a homestead and levy upon crops growing thereon is unauthorized by law, but contend that the measure of damages is not the value of the crops appropriated and converted by virtue of such levy. This may not be the full measure of damages, for there may be damages other than the conversion of the property, but to the extent of the property appropriated or converted its value is the measure. This was all the actual damages claimed or proven in this case, and when appellee proved that his property was unlawfully seized and appropriated at the instance of appellant, he was entitled to recover at least the value of the property as the measure of the damages.

In our opinion as long as a crop grown upon a homestead is unsevered from the realty, that it partakes of its nature and that its appropriation and conversion is of a part of the homestead and can not be regarded merely as the conversion of personalty. But however this may be, the contention of appellants that the court erred in refusing to instruct the jury that crops which are grown on a homestead are personal property can not be maintained upon the ground that the cotton levied upon was matured and standing in the field unpicked when the levy was made, for the evidence does not show that the crop was mature at that time. True, part of the cotton was open and ready for picking, but the evidence shows that the crop was picked thrice after the levy was made. If it was all mature and open, why was it not all gathered during the first picking?

A homestead may consist of several parcels of land which need not be adjoined or contiguous to the one upon which are situated the dwelling house and home of the family, but may be entirely disconnected therewith or each remotely situated therefrom. Spear, Law of Marr. Wom., sec. 249. Nor is it necessary that the several parcels should be acquired at the same time; nor, when it consists of leased premises, that the several parcels should be leased from and held under the same landlord. Were the several parcels designated and intended as a homestead and used for homestead purposes by the head of the family at the time of the levy is the question. If they were, then no parcel of it, though it may have been separated from that part upon which the dwelling house and home of the family was situated, would be subject to execution or liable for the debts of the owner, i. e., if the aggregate quantity of parcels did not exceed 200 acres. In this case the dwelling house and home of appellee's family was on a parcel of land rented from Daugherty, and was separate and detached from the twenty-five acres afterwards rented from Parker upon which the cotton levied upon was growing. Under these facts, which are undisputed, it would have been misleading to have charged the jury, as was requested by appellants, that "before the Parker land would become also a part of defendant's homestead, there must be such use as would amount to a designation of homestead of the subse-

quently acquired Parker land as fully as the same would be required in the original designation of homestead." The original designation of the part rented from Daugherty consisted in appellee's moving with his family into the dwelling house situated thereon with the intention of living there during the term for which the premises were leased. This was a full and complete designation, and when the Parker land was leased for homestead purposes, this designation, by residence on the Daugherty parcel, became, in connection with appellee's appropriation of the Parker parcel to homestead uses, the designation of that parcel. In other words, without the proper designation of the Daugherty parcel in the manner aforestated, there would have been, under the facts in this case, no designation as a homestead of the parcel subsequently rented from Parker. But the proper designation attached to it, and it became a part of appellee's homestead as soon as he began to appropriate and use it in connection with the Daugherty property for homestead purposes.

It was a matter of no concern to any one except the original lessor (Mrs. Graves) whether appellee rented from her lessee (Parker) with or without her consent. If, however, her consent were necessary, there is abundant evidence of it, of her ratification of the lease, for the evidence shows that appellee entered upon it as the lessee of Parker, planted and raised the crop of cotton thereon, and when it was gathered she claimed a part of the fruits of appellee's labor as rents due from him to her. It was error in the court to charge that if appellee were a subtenant as to the Graves land, he could not rent and claim it as a homestead without the consent of Mrs. Graves; and then to charge the jury directly to the contrary. Yet this error, under the facts, was harmless to appellants, for they were not entitled to the part of the charge in their favor, for neither the law nor the facts warranted it.

If appellants deemed the charge upon the question of homestead not full enough, they should have presented to the court a special charge embracing everything that they deemed necessary for the jury to consider in determining the question. But they devoted all their efforts to prevent the court from submitting such issue, and sought, by asking special instructions, to have the court withdraw such issue from the jury by telling them that the facts were not such as would warrant them in considering the question of homestead. The issue was clearly raised by the pleadings and evidence, and the charge of the court, as far as it went, was the law. If it did not go far enough, it was the fault of appellants in not presenting special charges embracing everything they desired to be considered by the jury in determining the issue.

As we have said in the preceding part of this opinion, the measure of damages was the value of the cotton converted at the time of the levy. The land upon which it was grown was not rented by the appellee from Mrs. Graves, and primarily he was not indebted to her for its rental, but the rent was directly due her from Parker. She did not intervene in this suit for the rents due her, nor was she in any way a party to the pro-

ceeding, and the payment to her by the constable of what she claimed as rent due her would not prevent appellee from recovering the full value of the property converted. He could not have his property taken and the proceeds of the sale of a part of it arbitrarily paid to another upon the assumption that the payment was in settlement of his debt, without having opportunity to be heard upon the question of such indebtedness.

The ground upon which the judgment in favor of appellee rests is that, the property was exempt from seizure at the time it was levied upon by virtue of appellant's writ of attachment. This is established by the verdict; and being settled it was proper for the court to enter judgment with the provision that the amount recovered by appellee could not be offset by the judgment recovered against him by appellants. For if the judgment based upon the wrongful seizure and conversion of exempt property could be offset by a judgment for debt recovered by the adverse party in the same suit, our exemption laws would be rendered ineffective. Cone v. Lewis, 64 Texas, 331; 12 Am. and Eng. Enc. of Law, 2 ed., p. 265; Duff v. Wells, 7 Heisk. (Tenn.), 17.

There is no error assigned requiring a reversal of the judgment, and it is therefore affirmed.

*Affirmed.*