### In re MILLER.

(District Court, D. Montana. March 27, 1915.)

No. 762.

BANKRUPTCY ⊕⟶396—PROPERTY PASSING TO TRUSTEE—GROWING CROPS.

A crop growing upon a homestead on public lands of the United States at the time the homestead entryman became bankrupt did not pass to the trustee, under Bankr. Act July 1, 1898, c. 541, § 70, 30 Stat. 565 (Comp. St. 1913, § 9654), vesting in the trustee property not exempt, which prior to the filing of the petition the bankrupt could by any means have transferred, or which might have been levied upon and sold under judicial process against him, as this imports property capable of change of ownership and enjoyment without recourse to property and labor of the bankrupt, which are not a part of the estate and upon which creditors have no claim, his contract to purchase from the United States was a personal contract, not assignable or subject to execution, and which he could at any time abandon, the crop had no existence separate from the land, and no transfer value, as its value was potential only, and such as might be created by the land and future labor; nor was the crop subject to levy and sale, as thereby the bankrupt might be prevented from performing his contract with the United States, especially where the trustee permitted the bankrupt to devote his time, money, and labor to maturing the crop before electing to claim it.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 659–668; Dec. Dig. ⊕⟶396.]

In Bankruptcy. In the matter of R. S. Miller, bankrupt. On review of an order of the referee requiring the bankrupt to schedule certain property. Order overruled.

Jos. C. Smith, of Dillon, Mont., for petitioning creditor.

Henry G. Rodgers, of Dillon, Mont., and H. W. Rodgers, of Butte, Mont., for bankrupt.

BOURQUIN, District Judge. In February, 1914, Miller was adjudicated a voluntary bankrupt. He then was in occupancy of a homestead upon public lands of the United States, and thereon had 50 acres in winter wheat. The former was scheduled, but the latter not, though he disclosed it at the first meeting of creditors. The trustee had knowledge of the wheat, but on advice assumed it followed the land, which latter was set off as exempt in April, 1914. In due time Miller reaped the crop, 987 bushels. A creditor then petitioned to compel the bankrupt to schedule the wheat, and after hearing the referee so ordered, subject to certain allowances to the bankrupt for rent of the land and his other expenses in making the crop. The bankrupt asks review.

The referee's order conforms to In re Daubner (D. C.) 96 Fed. 805, but it is believed the law is otherwise. Analogous cases are In re Coffman (D. C.) 93 Fed. 422; In re Hoag (D. C.) 97 Fed. 543; In re Bar-

row (D. C.) 98 Fed. 582; In re Sullivan (D. C.) 142 Fed. 620; Id., 148 Fed. 815, 78 C. C. A. 505. This growing crop of wheat, when the bankruptcy petition was filed, was not property of the character that vests in the trustee. The latter is only property not exempt, and which the bankrupt "could by any means have transferred or which might have been levied upon and sold under judicial process." Bankruptcy Act, § 70. This imports property capable of change of ownership and enjoyment, without recourse to or drafts upon property and labor of the bankrupt, which are not part of the estate in bankruptcy, and upon which creditors have no claim subsequent to adjudication.

It will be noted the land upon which the wheat was growing was held by the bankrupt subject to performance by him of conditions precedent of his contract to purchase from the United States. It was a personal contract analogous to a personal privilege, not assignable, and not subject to execution, and which he could at any time abandon, and thereby extinguish. His property in the land was exempt, not by state law, but from its nature. Even when title is secured, by federal law the land is not liable for debts incurred prior to patent. R. S. § 2296 (Comp. St. 1913, § 4551). When the bankruptcy petition was filed, this crop of wheat had no separate existence. It was in the nature of an incident that followed the land. Its value was potential only—that might be created by the land and future labor. Of itself, it had no transfer value. It could be transferred only in connection with a transfer of occupancy, use, and literal consumption of the land to bring it to maturity. Such a qualified transferable quality is not that of section 70, supra.

Nor was this crop then subject to levy and sale, if for no other reason, because otherwise the owner thereby might be prevented from performing the conditions precedent, of which was cultivation to crop, of his contract with the United States, and he might abandon, relinquish, or forfeit the land, whereupon land and crop would be property of the United States, to the great injury of the owner, and without benefit to the levying creditor, and to the loss of the contract to the United States. Furthermore, levy and sale could not confer right to oust the owner from the exclusive possession and use secured to homestead entrymen of public lands. After such levy and sale the crop would necessarily demand the bankrupt's land and labor to mature and sever.

But the land was always exempt, and the fruits of his labor likewise, after bankruptcy petition filed. It will not do to concede payment out of the crop for such use of the bankrupt's land and labor. The Bankruptcy Act does not authorize either to be commandeered; and if the crop failed or was destroyed at harvest, from where would come this payment? The bankrupt having right to exclusive use of his homestead land, no levy and sale could prevent him from lawfully replowing and reseeding the land after his bankruptcy petition was filed. To property of this evanescent quality no levy could attach. The case is distinguishable from those wherein it has been held that growing crops are so far personal property that, though upon lands exempt by state law, they are subject to levy and sale; for in these latter the personal obligation of the owner of the land continues until after the crop is

matured and severed, and the creditor, until paid, has claim upon the fruits of his debtor's exempt land and labor. In bankruptcy it is otherwise. The debtor's personal obligation is extinguished at adjudication, and thereupon his exempt and after-acquired property are free from creditors' claims though never paid. To the argument of possible injustice, in that a homestead entryman might devote much labor and money to put much land to crop, and then invoke bankruptcy between seedtime and harvest, it may be responded: No more than if he erected buildings and fences, cleared, ditched, and broke the land, none of which would inure to the benefit of his estate in bankruptcy.

Another sufficient reason for the conclusion herein is that, by standing by and permitting the bankrupt to devote his time, money, and labor to maturing the crop as his own, the trustee is now estopped to claim it. He made his election. No fraud appearing, it is final, and concludes creditors. The bankrupt assumed all risk and hazard of failure, the trustee none, and in justice the former is entitled to whatever success was achieved. It goes without saying that, if the crop had failed, this proceeding would not have materialized, and no one would propose compensating the bankrupt for his loss.

The referee's order is overruled.