## OLMSTED–STEVENSON CO. v. MILLER.*

### In re MILLER.

(Circuit Court of Appeals, Ninth Circuit. March 6, 1916.)

No. 2628.

1. BANKRUPTCY ⬳446—PETITION TO REVISE—REVIEW OF QUESTIONS OF FACT.

On a petition to revise proceedings in bankruptcy, the court is neither required nor permitted to review the testimony.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 929; Dec. Dig. ⬳446.]

2. BANKRUPTCY ⬳396(5)—PROPERTY EXEMPT—GROWING CROPS.

A crop growing when the petition was filed upon a homestead held by the bankrupt under the laws of the United States, upon which final proof had not been made, was exempt, as when an order is made setting aside a homestead to a bankrupt, whether it be exempt under the laws of the state or the laws of the United States, the order of necessity carries with it all growing and unmatured crops.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 668; Dec. Dig. ⬳396(5).]

3. COURTS ⬳366(19)—FEDERAL COURT—STATE LAW—EXEMPTIONS OF BANKRUPT.

Whether a crop growing on a homestead held by the bankrupt under the laws of the United States, upon which final proof had not been made, was exempt, was a question of local law, controlled by the laws of the state, as construed by its highest court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 957; Dec. Dig. ⬳366(19).]

Gilbert, Circuit Judge, dissenting.

Petition for Revision of Proceedings of the District Court of the United States for the District of Montana; George M. Bourquin, Judge.

In the matter of R. S. Miller, bankrupt. An order of the referee, requiring the bankrupt to file a supplemental schedule, was reversed by the District Court (221 Fed. 690), and the Olmsted-Stevenson Company files a petition to revise. Judgment affirmed.

John B. Clayberg, of San Francisco, Cal., for petitioner.

Lewis P. Forestell, of San Francisco, Cal., and Rodgers & Rodgers, of Anaconda, Mont., for respondent.

Before GILBERT and MORROW, Circuit Judges, and RUDKIN, District Judge.

RUDKIN, District Judge. On the 5th day of February, 1914, the respondent, Miller, filed his voluntary petition in bankruptcy in the court below, accompanied by the usual schedules of his debts, assets, and property. At the time of filing the petition the bankrupt was in possession of a homestead held by him under the laws of the United States, upon which final proof had not been made. A crop of wheat growing on this homestead was not included in the schedules filed. An order of adjudication followed the filing of the voluntary petition, and this in turn was followed by an order of discharge some two months later. On the 28th day of October, 1914, the petitioner, Olm-

sted-Stevenson Company, a creditor of the bankrupt, filed a petition with the referee in bankruptcy, setting forth the failure of the bankrupt to include the growing crop in his schedule, and praying that the case might be reopened and the bankrupt required to file a supplemental schedule containing the omitted property. An order to show cause was made on the filing of this petition, and upon a hearing before the referee an order was made granting the prayer of the petition and requiring the bankrupt to file a supplemental schedule. The order itself is not in the record, but we gather from the opinion of the referee that it was to the effect that the bankrupt should account to the trustee for the value of the crop less certain offsets not material here. A petition was then filed with the court below to review the order of the referee in that behalf, and upon a hearing in the District Court the order of the referee was reversed. The present petition was thereupon filed in this court for a revision of the order of the District Court.

[1] It appears from the record that the court below reversed the order of the referee on two grounds: (a) Because the growing crop was exempt and did not pass to the trustee; and (b) because the trustee was estopped by his conduct from claiming the crop. The first question is one of law arising on the pleadings in the bankruptcy court; but the question of estoppel is one of fact, which can only be determined by a reference to the testimony. There was no finding by the referee or the court below on that issue; there was no agreed statement of facts; and if this court is to determine the question at all, it must do so from a consideration of the testimony taken before the referee. But in a proceeding of this kind we are neither required nor permitted to review the testimony. In re Richards, 96 Fed. 935, 37 C. C. A. 634; In re Boston Dry Goods Co., 125 Fed 226 60 C. C A. 118; In re Taft, 133 Fed. 511, 66 C. C. A. 385; In re Pettingill & Co., 137 Fed. 840, 70 C. C. A. 338; Steiner v. Marshall, 140 Fed. 710, 72 C. C. A. 103; In re Roadarmour, 177 Fed. 379, 100 C. C. A. 611; Hall v. Reynolds, 224 Fed. 103, 139 C. C. A. 659

[2, 3] For this reason the petition to dismiss interposed in this court should perhaps be granted; but in any event we agree with the conclusion of the court below on the merits of the question involved. When an order is made setting aside a homestead to a bankrupt, whether the homestead be exempt under the laws of the state or under the laws of the United States, the order of necessity carries with it all growing and unmatured crops. The homestead is allowed to the debtor in order that he may support himself and his family, not as a mere shelter from the elements; and if he is not entitled to use and retain the growing crops, well may he ask why is the homestead set apart at all. Let us now view the subject in the light of the authorities. The question, of course, is one of local law, to be determined by reference to the laws of the state as construed by its highest court. Our attention has not been called to any decision of the Supreme Court of Montana, but a number of federal cases are cited where the question has been decided adversely to the homestead claimant.

In Re Coffman (D. C.) 93 Fed. 422, it was held that crops growing

on a homestead set apart under the laws of the state of Texas at the time of an adjudication in bankruptcy are not exempt, and must be surrendered to the trustee in bankruptcy. This decision, however, is clearly in conflict with the repeated decisions of the highest court of that state. Alexander v. Holt, 59 Tex. 205; Parker v. Hale (Tex. Civ. App.) 78 S. W. 555; Staggs v. Piland, 31 Tex. Civ. App. 245, 71 S. W. 762; Moore v. Graham, 29 Tex. Civ. App. 235, 69 S. W. 200. In re Daubner (D. C.) 96 Fed. 805, from the District of Oregon, and In re Hoag (D. C.) 97 Fed. 543, from the Western District of Wisconsin, are based largely on the decision in the Coffman Case, and not upon decisions of the local courts.

In Re Sullivan, 148 Fed. 815, 78 C. C. A. 505, from the District of Iowa, the court held that ripe corn standing in the field on a homestead was not exempt. Whether the court intended to distinguish between ripe corn and other growing crops does not appear from the opinion; but in any event the decision seems to be opposed to the decision of the Supreme Court of the state of Iowa in Morgan v. Rountree, 88 Iowa, 249, 55 N. W. 65, 45 Am. St. Rep. 234. In the latter case it was held that moneys due for rent of a homestead are exempt from execution, and in referring to certain cases relating to growing crops the court said:

"It is clear that such crops are not exempt under statutes exempting personal property, unless specified therein. Such crops, if exempt, must, in the absence of such specifications, be so under the law exempting the homestead. The reasoning in these cases seems to us to lose sight of the spirit and purpose of the law exempting homesteads. The conflict in the cases is explained, in part at least, by the differences in the statutes of these states. It will be observed, however, that in none of them is it held that crops, while growing upon the homestead, are not exempt. To answer the question certified, we must ascertain the letter and spirit of our statute exempting homesteads. It is certainly the spirit and purpose to exempt, not only the homestead, but also the use thereof, for without the use the exemption would be valueless. It is not simply as a place of shelter, a place in which to live, that homesteads are exempt. but also as a means of making a living, as is shown by the exemption of one-half an acre in town, 40 acres in the country, and the shop or building, when situated on the exempt premises, in which the head of the family carries on his business. The use of the homestead, as well as the homestead itself, is unquestionably exempt so long as the homestead character is maintained. When the homestead is terminated, by abandonment or otherwise, the exemption ceases; but in this case it was not terminated. We think it is in harmony with the evident spirit and purpose of our statute to hold that the head of a family owning a homestead has the right to hold as exempt, not only the homestead and its use, but also crops or money which he may derive from its use while the property continues to be his homestead. If the homestead is terminated by abandonment or otherwise, the exemption ceases. To hold that the owner of a homestead can only hold as exempt such proceeds of its use as the industry of himself or family has produced would be in many cases to deny the benefits of such exemption entirely."

And in concluding its opinion the court said:

"We are clearly of the opinion that proceeds derived from the use of the homestead while it remained such are exempt to the head of a family."

The court in the Sullivan Case disposed of the decision of the state court by saying that so much of the opinion as related to growing crops was obiter. With this conclusion we are unable to agree. The state

court was discussing the nature of the homestead, with all its incidents, and, while only the question of rents was there involved, yet the rents and products of a homestead are so closely related that what is said of the one is of necessity applicable to the other.

In re Friedrich (D. C.) 199 Fed. 193, from the District of Minnesota, was based on the ruling in the Sullivan Case from the same circuit, in the absence of any controlling decision by the Supreme Court of the state.

The courts which hold that growing crops are not exempt lose sight of the objects and purposes of homestead laws, and the reasons for their decisions are by no means conclusive. These reasons are, first, that growing crops may be sold or mortgaged; and, second, that the exemption statutes do not specifically exempt them. But the power of alienation is incident to the ownership of all property, exempt or nonexempt. The homesteader may dispose of his homestead, and of his other exempt property as well; he may dispose of his household furniture, and even of his clothing; but it does not follow from this that a sheriff or trustee in bankruptcy may seize them. Growing crops are not specifically exempted by statute; but neither are growing trees, fences, or buildings. They are each and all exempt, however, in our opinion, by necessary implication. A growing crop will pass by a sale of the land, unless expressly reserved, and, as already stated, an order setting aside a homestead is equivalent to a sale or other transfer. The reason for the exemption of crops growing on a homestead, given by the Court of Civil Appeals of Texas in Moore v. Graham, supra, is, in our opinion, unanswerable:

"The occupation by the head of a family of a homestead for agriculture is for the purpose of realizing therefrom something to support himself and family, rather than to employ it as a mere place wherein to shelter him and them from the winter's cold or summer's heat. If the exemption extended to him does not include an ungathered crop, whether matured or not, it is of no benefit to the owner. In such an event he and his wife and children would only have the privilege of standing in the house or yard, and seeing an officer invade their field, and take possession of, by virtue of an attachment or execution, the crops growing or standing thereon, and appropriate the fruits of their toil, without any benefit from what the law was intended to secure them."

We see no distinction between crops growing on a homestead claim existing under the federal statutes and crops growing on a homestead set apart by state laws. Perhaps the reason for upholding the exemption in the former case would be stronger than in the latter; but in either case to set aside a homestead to an unfortunate debtor in the spring, and permit a trustee in bankruptcy to invade it in the fall and carry away the crops, is to keep the word of promise to the ear and break it to the hope.

The judgment of the court below is affirmed.

GILBERT, Circuit Judge (dissenting). Section 6 of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 548 [Comp. St. 1913, § 9590]) provides that the act shall not affect the allowance to bankrupts of the exemptions prescribed by the state laws in force at the

time of filing the petition; and section 70a (section 9654) provides that the trustee of the bankrupt's estate shall be vested by operation of law with the title of the bankrupt as of the date when he was adjudged a bankrupt, "except in so far as it is to property which is exempt," to all property which prior to filing the petition "he could have by any means transferred," etc. The property here involved could have been transferred, for it is settled by the statutes and decisions of Montana that the owner may mortgage a growing crop. Brande v. Babcock Hardware Co., 35 Mont. 256, 88 Pac. 949, 119 Am. St. Rep. 858. And being transferable under the laws of the state of Montana, it passed to the trustee, unless it was property which was exempt.

It is not contended that it was exempt under the laws of Montana, but it is said that it is exempt for the reason that it was a crop produced upon land which the bankrupt held as a homestead entry under the public land laws of the United States. It may be conceded that growing crops on such a homestead claim are not subject to execution; but the test question here is not whether the crops were subject to execution, but whether they could have been transferred by the voluntary act of the owner. That they could have been so transferred is not questioned. And it is not denied that in every case in which the right of the trustee in bankruptcy to growing crops on the homestead land of the bankrupt has been called in question in the federal courts the right has been sustained. In Re Coffman (D. C.) 93 Fed. 422, it was held that a bankrupt cannot claim as exempt property a crop of cotton growing on his homestead at the time of the adjudication in bankruptcy, although an execution could not have been levied upon the property before its severance. The court said:

"But in a case of voluntary bankruptcy, where the bankrupt comes forward and tenders all of his property subject to execution, to be applied ratably on his debts, in order that he may reap the benefits of the Bankruptcy Act, the question may well be asked: Does he not, by his act, extend an invitation and give warrant to the trustee to come upon his homestead and gather that which belongs to his creditors?"

In re Daubner (D. C.) 96 Fed. 805, was a case in which the growing crop of the bankrupt was upon land acquired by the latter under the United States Homestead Law (Act Cong. May 20, 1862, c. 75, 12 Stat. 392). The court held that the crop passed to the trustee. The court said:

"Upon a sale of the land the growing crops, unless reserved, would pass to the purchaser; but they are capable of reservation and of mortgage and sale by the owner of the land, and when such owner voluntarily goes into bankruptcy he must be held to intend that such of his property and rights as are the subject of disposition by him, and are not expressly exempt, shall vest in the trustee for the benefit of creditors. Such crops are the fruits of the bankrupt's industry, or of his investment of money, or both."

So in Re Hoag (D. C.) 97 Fed. 543, it was held that the bankrupt may not claim as exempt crops growing on his homestead at the time of filing his petition in bankruptcy. In Re Sullivan, 148 Fed. 815, 78 C. C. A. 505, the Circuit Court of Appeals for the Eighth Circuit affirmed the District Court for the Northern District of Iowa in

holding that corn standing in the field on the homestead of the bankrupt, which had fully matured at the date of the bankruptcy, is not exempt under the homestead exemption statute of Iowa. In Re Friedrich (D. C.) 199 Fed. 193, the ruling of In re Sullivan was followed.

But it is held by the majority of this court that those decisions are all to be disregarded, for the reason, it is said, that in two of them the courts erroneously construed the decisions of the state courts, which they professed to follow, that the decision in Re Coffman was in conflict with the decisions of the Supreme Court of Texas in Alexander v. Holt, 59 Tex. 205, Parker v. Hale (Tex. Civ. App.) 78 S. W. 555, Staggs v. Piland, 31 Tex. Civ. App. 245, 71 S. W. 762, and Moore v. Graham, 29 Tex. Civ. App. 235, 69 S. W. 200. All of those cases except the first were decided after the decision in Re Coffman. In Texas, as in some other states, a distinction has been made between crops growing on a homestead and crops which have been gathered and severed from the soil; and it is held that the former take the character of the land as to exemption, but that the latter do not. The decisions so cited from Texas sustain that rule. It is a mistake to say that In re Coffman is in conflict with them. In that case the court held that, where the homestead laws of the state do not include growing crops, the bankrupt cannot claim as exempt property the crop growing on his homestead at the time of the adjudication in bankruptcy, although an execution could not have been levied upon such crop before its severance, and that if, after the appointment of the trustee, the bankrupt gathers and removes the crop, he must surrender the same or the proceeds of the sale to the trustee. The court in that case cited the decisions of the Supreme Court of Texas to sustain the conclusion so reached.

So it is said that the decision of the Circuit Court of Appeals for the Eighth Circuit in Re Sullivan is in conflict with the decision of the Supreme Court of Iowa in Morgan & Hunter v. Rountree, 88 Iowa, 249, 55 N. W. 65, 45 Am. St. Rep. 234. But the Circuit Court of Appeals carefully considered and distinguished Morgan & Hunter v. Rountree. That was a case in which the Supreme Court of Iowa had held that the homestead law of that state created an estate which the owner thereof may enjoy, and that, if he cannot conveniently reside on the homestead, he may lease it and enjoy the rent reserved with like immunity from claims of creditors as would attach to the estate itself. The Circuit Court of Appeals held that the Supreme Court of Iowa, in construing the state statute of exemption, had not decided that the crops growing on an exempt homestead are for that reason alone exempt from liability to creditors of the owner of the homestead.

Many of the reported cases on the subject of exemptions of crops raised upon homesteads are controlled by the provisions of the state statutes whereby the homesteads are created. All of those statutes recognize that the occupation of homestead land is for the purpose of realizing therefrom something to support the claimant and his family, and in some states express exemption is made of all produce, rents, or profits arising from the homestead land, and in most states

provisions are made for the protection of the rights of the homestead claimants. Generally speaking, the right preserved is the right to enjoy a home and the land on which it is situated from liability to forced sale to pay the debts of the owner, with certain restraints upon his right of alienation, but with the power to waive, abandon, or terminate the right.

The possessory right to land under such state statutes differs widely from the right of the settler upon a homestead under the public land laws of the United States. That right is subject to no limitation or restraint, except that the lands acquired by homestead entry shall not in any event become liable for the satisfaction of any debt contracted prior to the issuing of the patent therefor. The homestead involved in the present case is of the latter class. The right of the claimant to the products of the land is not affected by any provision of a state statute, and, of course, it cannot be affected by any decision of the courts of the state in which the land lies. The question here is purely one of the effect of the laws of the United States. Under those laws no right of the bankrupt in the land of the homestead claim passed to the trustee. But the right to the growing crops was subject to transfer by the bankrupt at the time when the petition in bankruptcy was filed. It was property which he could have "transferred," as provided in section 70a. As was said by Judge Sanford in Re Burnett & Co. (D. C.) 201 Fed. 162:

"The mere fact that the property could not have been levied upon and sold at the date of the adjudication would not prevent the bankrupt's title from passing to the trustee, if it were property which the bankrupt could by any means have transferred."

The decisions of the federal courts, so far as they have considered the question here involved, sustain the doctrine which may be thus expressed: When a homestead entryman voluntarily files his petition in bankruptcy and asks the court to declare him a bankrupt, and to accept his estate, and to discharge him from his liability to creditors, the trustee becomes vested of all the bankrupt's transferable property, except that which is exempt under the law of the state; that if a portion of the bankrupt's property is a growing crop, which his labor and money have produced upon a homestead, which he holds under the laws of the United States, and such growing crop is not exempt under the law of the state, he should be held to surrender with it to the trustee the right to enter upon the land, if necessary to remove the crop therefrom; and that where, as here, the bankrupt has harvested the crop, he should be required, as was ordered by the referee in the case at bar, to surrender the same or the proceeds thereof to the trustee, reserving to himself the cost and expense of raising and harvesting the crop.