## VOUGHT v. KANNE.

(Circuit Court of Appeals, Eighth Circuit. January 15, 1926.)

No. 272.

1. **Bankruptcy** ⟨⊶446.

Questions of fact cannot be determined on petition to revise.

2. **Bankruptcy** ⟨⊶396(1)—Courts ⟨⊶366(19).

Bankruptcy exemptions depend on and are same as those allowed by governing state statutes, as construed by highest state court.

3. **Courts** ⟨⊶370.

If there be no controlling state decision construing state exemption statutes, federal courts construe such statutes.

4. **Bankruptcy** ⟨⊶396(5).

Crops growing on exempt homestead of bankrupt are not exempt, under Gen. St. Minn. 1923, §§ 8336, 8337, 9447.

Kenyon, Circuit Judge, dissenting.

Petition to Revise Order of the District Court of the United States for the District of Minnesota; Wilbur F. Booth, Judge.

In the matter of the bankruptcy of Andrew P. Vought. From an order of the trial court, affirming an order of the referee designating certain grain as exempt, and refusing to designate certain other grain as also exempt, the bankrupt petitions to revise. Order affirmed, and petition to revise dismissed.

N. L. Glover, of Windom, Minn., for petitioner.

O. J. Finstad, of Windom, Minn., for respondent.

Before STONE and KENYON, Circuit Judges, and AMIDON, District Judge.

STONE, Circuit Judge. This is a petition by a bankrupt to revise an order of the trial court affirming an order of the referee designating certain grain as exempt and refusing to designate certain other grain as also exempt.

The bankrupt claimed all grain crops growing on the designated homestead as exempt because a part of and included within the statutory exemption of the homestead; and, in addition, claimed full feed and seed exemptions from grain growing on land other than the homestead. The trustee designated certain amounts of hay, oats and corn for feed and of oats, flax and corn for seed. Apparently the only exception to this designation was filed by the bankrupt. The referee reviewed the designation, somewhat reducing the allowances made by the trustee. On petition by the bankrupt to review, the trial court affirmed the allowance of the referee.

[1] Three questions, claimed to be of law, are set out in this petition to revise, only two of which are presented here. One of these two is whether the feed and seed allowances should have been made from grain grown on land other than the homestead. From the record here it cannot be determined whether such allowances were from grain grown on the homestead or on other land. As questions of fact cannot be determined on a petition to revise and as the burden is upon such a petitioner to show error of law upon a settled state of facts shown by the record, we cannot examine this matter.

[2, 3] The main contention raised in the petition and urged here is that the bankrupt is entitled to the crops growing on the homestead as an element or part of the homestead exemption. Exemptions in bankruptcy proceedings depend upon and are the same as those allowed by the governing state statutes as construed by the highest court of the state. Fletcher v. Kennedy, 282 F. 622, 623 (8th Cir.). If there be no controlling state decision, the federal courts construe such state statutes. Provident Savings Institution v. Mass., 6 Wall. 630, 18 L. Ed. 907; In re Sullivan (8th Cir.) 148 F. 815, 817, 78 C. C. A. 505.

The bankrupt contends, first, that certain decisions of the Supreme Court of Minnesota have determined that growing crops on the homestead are exempt as a part of the homestead; and, second, that, if there be no state decisions settling this point, this court should so construe the statute. The cases

upon which reliance is thus placed are Lockey v. Lockey, 128 N. W. 833, 112 Minn. 512; Stauning v. Crookston Mercantile Co., 159 N. W. 788, 134 Minn. 478; Erickson v. Paterson, 50 N. W. 699, 47 Minn. 525; Sparrow v. Pond, 52 N. W. 36, 49 Minn. 412, 16 L. R. A. 103, 32 Am. St. Rep. 571; Kammrath v. Kidd, 95 N. W. 213, 89 Minn. 380, 99 Am. St. Rep. 603; and Kirkeby v. Erickson, 96 N. W. 705, 90 Minn. 299, 101 Am. St. Rep. 411. The Lockey Case is cited as holding directly that "the proceeds of the homestead are exempt." That case did not involve the "proceeds," in any sense, of a homestead. The sole question there determined was whether certain tenements which formed part of the building wherein the claimant lived in a city and which entire building covered less than the area allowed as a homestead in a city were exempt as part of the homestead. The holding was that the claimant had a right, under the homestead exemption statute, to a certain area (to include the home residence) and that this right was not effected by the fact that parts of that area, other than the home residence, were devoted "to purposes other than a dwelling place." 128 N. W. 834, 112 Minn. 514. The Stauning Case is of the same character and the ruling therein to the same effect. The other cases cited bear upon the legal relation of growing crops to the land and are of two classes; those involving the question of whether growing crops pass under deeds conveying the land and making no mention of the crops; and those involving the right to claim homestead exemptions against the levy of executions or attachments upon crops or products growing on the homestead. The Kirkeby Case is an instance of conveyance, but the decision there turned on whether wild grasses growing from perennial roots should be regarded as fructus naturales and, while unsevered, as "pertaining to the realty." It is hardly in point here as this controversy concerns annual crops which are classed as fructus industriales by the Minnesota Supreme Court. Erickson v. Paterson, 50 N. W. 699, 47 Minn. 525; and see the Kirkeby Case, 96 N. W. 705, 90 Minn. 300.

In the Kirkeby Case the court regarded the right to enter upon the land and sever the grass (held to be fructus naturales) as an interest in land because the owner had a right to the exclusive possession of the land but this reason was held not to apply if it was intended that the owner sever the crop and it could not apply to the trustee in bankruptcy because he is vested by the act (Bankruptcy Act, § 70 [Comp. St. § 9654]) with possession and right to possession of all unexempted property and even of exempted property until such be set aside as exempt. The Kammrath Case involved the conveyance of land on which were growing crops. The Erickson Case involved both such a conveyance and also a levy upon such crops. The Sparrow Case was one of levy on growing crops. The Kammrath Case held that growing crops pass with a conveyance of the land unless expressly reserved. To the same effect is the Erickson Case. These cases are not determinative that such crops are, for all legal purposes, to be regarded as a part of or inseparably pertaining to the realty.

Growing crops occupy an unique legal position. They spring from and are physically attached to the land, but are intended to be and may be severed therefrom without injury to the land. When so severed there can be no question that they are then personal property. There is some conflict in the different jurisdictions as to whether such crops, while unsevered, are personalty or realty but the great weight of authority is that unsevered annual crops are personalty. 17 C. J. 379, note 5; 8 R. C. L. 356, notes 13 and 14. This was the common-law rule and it has been followed in most of the American Jurisdictions. 23 L. R. A. (N. S.) 1219, note. However, it is hardly correct to say that any jurisdiction, where there are decisions upon different character of transactions affecting growing crops (such as conveyances, statute of frauds, ejectment, trespass, landlord and tenant, execution levy, attachment, inheritance) has held such crops in all instances and as to all transactions to be either personal property or real property. The determination "depends very greatly on the nature of the transaction in which the question arises." 8 R. C. L. 356. Also see 17 C. J. 379; Minneapolis Iron Store Co. v. Branum, 162 N. W. 543, 36 N. D. 355, L. R. A. 1917E, 298. Therefore, as above stated, the determination in the Kammrath and the Erickson Cases that growing crops pass, unless expressly excepted, on conveyance of the land is not decisive that they pass as a part of the homestead under the exemption laws of the state. As said in the Kirkeby Case, 96 N. W. 706, 90 Minn. loc. cit. 300, in discussing the rule laid down in the Kammrath and Erickson Cases: "This is because *for the purposes of sale* they are regarded as part of the real estate" (italics ours). The

"purpose" now under examination is the right of exemption from the claim of creditors. The Erickson Case involved not only a conveyance of the land but a levy on crops growing on the land conveyed. The land there in question had been entered as a homestead under the public land laws and the entry perfected to the stage where there was a right to a patent. The exemption there dealt with was that of an entryman and in no way involved the state exemption statutes. This limitation of that decision appears not only in the opinion but is expressly announced in the Sparrow Case, 52 N. W. 36, 49 Minn. at page 419. The Sparrow Case involved a levy on blackberries growing on land claimed as a homestead under the state statute. That decision makes the distinction between annual crops (fructus industriales) and produce from perennial shrubs (fructus naturales) and held that blackberries belong to the latter class and were not subject to levy as personal property under the common law which was unchanged by the state statute. While both the Erickson and Sparrow Cases involved levies, the former expressly avoided a determination as to the state exemption statutes and the latter was based upon the character of the produce which was legally different from that now being considered. Therefore, none of the cases upon which this petitioner relies have construed the state exemption statutes as to annual crops (fructus industriales) growing on a homestead exemption.

There being no decision of the highest court of the state construing the state exemption statutes it becomes our duty to make such construction. The bankrupt was a farmer cultivating, at the time the bankruptcy petition was filed, more land than he was allowed as a homestead under the state exemption statutes. Those statutes provided for a farm homestead exemption of 80 acres of land (G. S. Minn. 1923, §§ 8336, 8337) and certain designated personal property (section 9447). The homestead provision refers entirely to the residence and to land and makes no mention of crops or produce, growing or severed, on the land. Included in the personal property exemptions are certain enumerated live stock and "food for all the stock above mentioned necessary for one year's support, either provided or growing, or both, as the debtor may choose"; also, "necessary seed for the actual personal use of the debtor for one season" not exceeding certain stated amounts of named grains.

[4] The precise character of question presented here was before this court in the case of In re Sullivan, 148 F. 815, 78 C. C. A. 505. The statutes involved there were of the state of Iowa. There were no decisions of that state construing those statutes. In all legal essentials the Iowa statutes there involved are the same as those of Minnesota now being considered. We cannot reach a conclusion different from the one there announced without, in effect, overruling that decision. Exemptions vitally affect property rights. Decisions laying down rules which govern property rights should not be overruled and changed by a court without very clear and convincing reasons that such are unsound. The reasoning of the Sullivan Case (pages 817 and 818 [78 C. C. A. 507]) seems, to me, to be sound. In the course of that reasoning (page 818 [78 C. C. A. 508]) the court said:

"If all crops growing on an exempt homestead are ipso facto exempt, any one may secure a homestead near a large city, expend much money for seed, in fertilizing the ground, and in growing and harvesting the crops, and in that way secure large returns of vegetables and other products, sell them in a convenient and favorable market, accumulate a fortune, and successfully defy his creditors. Such possibility demonstrates that the theory of law which makes it possible is probably not sound, and induces us to give a construction to the statute, if the same can reasonably be done, which will not permit it."

This statement of possibilities proved strangely prophetic as shown by the case of In re Friedrich (D. C.) 199 F. 193, where a truck gardener owning a homestead in Minnesota, near St. Paul, claimed this same character of exemption which was denied by Judge Willard, largely upon the applicability and authority of the Sullivan Case. I think the reasoning and authority of the Sullivan Case is applicable here and that it should be followed.

The result is that the determination of the trial court is affirmed and the petition to revise dismissed.

AMIDON, District Judge (concurring). I concur in the affirmance of this case solely on the authority of In re Sullivan, 148 F. 815, 78 C. C. A. 505. If the question were new, I should be in favor of reversal on the grounds stated in Olmsted-Stevenson Co. v. Miller, 231 F. 69, 145 C. C. A. 257, and in Judge KENYON'S dissent. In my judgment these opinions contain a sound interpretation of the agricultural homestead stat-

ute. They do no more than give to the head of a family the "use" of the homestead for the family's support. The passage quoted from the Sullivan Case in Judge STONE'S opinion seems to me clearly unsound. It attempts to deduce the rule from the exception. The exemption of 80 acres is intended for ordinary farming conditions. It is a matter of common knowledge that a farmer, with the severest industry of. himself and family, cannot do more than produce a plain living on 80 acres of land. When the state as a whole is looked at, the 80-acre truck farmer is so exceptional as to be negligible.

I concur, because I think the Sullivan Case should not be reversed by a divided court.

KENYON, Circuit Judge (dissenting). The concrete question here is whether growing crops on a homestead exempt under the laws of Minnesota are also exempt. I agree that there is no decision of the highest court of Minnesota settling this question, and it is therefore our duty to give a construction to the Minnesota statute. I also agree that a somewhat similar question was decided by this court in In re Sullivan, 148 F. 815, 78 C. C. A. 505, and followed by the District Court of the United States for Minnesota in In re Friedrich, 199 F. 193. The Sullivan decision was based on the Iowa exemption law, and it seems to me is contrary to the holding of the Supreme Court of Iowa in Morgan et al. v. Rountree, 55 N. W. 65, 88 Iowa, 249, 45 Am. St. Rep. 234. The latter case dealt with money due from a homestead, and it was held to be exempt from execution. If money due for rent of a homestead is exempt, certainly a part of the crop to be given for rent would be likewise exempt, and a large percentage of the land in the middle West at least is so rented. In this case the Supreme Court of Iowa, speaking of the statute exempting homesteads, said:

"It is certainly the spirit and purpose to exempt, not only the homestead, but also the use thereof, for without the use the exemption would be valueless. It is not simply as a place of shelter, a place in which to live, that homesteads are exempt, but also as a means of making a living, as is shown by the exemption of one-half an acre in town, 40 acres in the country, and the shop or building, when situated on the exempt premises, in which the head of the family carries on his business. The use of the homestead, as well as the homestead itself, is unquestion-

ably exempt so long as the homestead character is maintained. * * * We think it is in harmony with the evident spirit and purpose of our statute to hold that the head of a family owning a homestead has a right to hold as exempt, not only the homestead and its use, but also crops or money which he may derive from its use while the property continues to be his homestead."

The Circuit Court of Appeals of the Ninth Circuit in Olmsted-Stevenson Co. v. Miller, 231 F. 69, 145 C. C. A. 257, has taken an exactly opposite position to that of this court in the Sullivan Case, and I think the great weight of authority, as well as sound reasoning, supports the position taken by the Ninth Circuit. It is true, of course, as stated in the opinion here, that decisions laying down rules which govern property rights should not be overruled and changed unless there are convincing reasons that they are unsound. With great respect for the learning and ability of the judges who decided In re Sullivan, I cannot bring my mind to any other conclusion than that the decision was unsound, contrary to the great weight of authority in the United States, and destructive of the universally accepted doctrine that exemption statutes should be liberally construed. Therefore it seems to me this court should overrule the doctrine of the Sullivan Case. There is a great public policy involved in exemption statutes. The homestead exemption does not accomplish its purpose if the owner cannot have the full use of the property. What would be the result if the debtor planted no crops? Would the creditor have the right to go in, take the land and plant crops? Clearly not. Can the garden on the homestead be taken by the creditors? Would it be contended that the usual exemption under nearly all state laws of a certain number of cows or chickens means that the creditors were entitled to the milk from the cows or to the eggs from the chickens? Is it the theory of exemption laws that the exemption is one of benefit only to the debtor in that he may sell the exempt property? Of what value is anything if the owner cannot use it?

As said in Olmsted-Stevenson Co. v. Miller, 231 F. 69, 72, 145 C. C. A. 257, 260: "To set aside a homestead to an unfortunate debtor in the spring, and permit a trustee in bankruptcy to invade it in the fall and carry away the crops, is to keep the word of promise to the ear and break it to the hope." A very clear statement of exemption of agricultural land is stated in Moore v.

Graham, 69 S. W. 200, 29 Tex. Civ. App. 235. It so admirably expresses the true philosophy of exemption laws that I quote therefrom this excerpt: "The occupation by the head of the family of a homestead for agriculture is for the purpose of realizing therefrom something to support himself and family, rather than to employ it as a mere place wherein to shelter him and them from the winter's cold or summer's heat. If the exemption extended to him does not. include an ungathered crop, whether matured or not, it is of no benefit to the owner. In such an event he and his wife and children would only have the privilege of standing in the house or yard, and seeing an officer invade, their field, and take possession of, by virtue of an attachment or execution, the crops growing or standing thereon, and appropriate the fruits of their toil, without any benefit from what the law was intended to secure them."

I respectfully dissent from the opinion in this case.